THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES RAMSEY, Defendant-Appellee.

Fourth District   No. 4—03—0268

Argued September 21, 2005.—Opinion filed December 1, 2005.

KNECHT, J., specially concurring.

Timothy J. Huyett, State's Attorney, of Lincoln (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Judith L. Libby (argued), both of State Appellate Defender's Office, of Springfield, for appellee.

PRESIDING JUSTICE TURNER delivered the opinion of the court:

In October 2002, the State charged defendant, Charles Ramsey, with unlawful possession with intent to deliver methamphetamine, unlawful possession with intent to manufacture methamphetamine, unlawful manufacture of methamphetamine, and unlawful possession of methamphetamine. In December 2002, defendant filed a motion to suppress evidence. In March 2003, the trial court granted defendant's motion.

On appeal, the State argues the trial court erred in granting defendant's motion to suppress evidence. We reverse.

## I. BACKGROUND

In October 2002, the State charged defendant by information with one count of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(6.5)(A) (West 2002)), alleging he knowingly and unlawfully possessed with intent to deliver more than 15 grams but not more than 100 grams of a substance containing methamphetamine. The State also charged defendant with single counts of unlawful possession with intent to manufacture methamphetamine (720 ILCS 570/401(a)(6.5)(A) (West 2002)), unlawful manufacture of methamphetamine (720 ILCS 570/401(a)(6.5)(A) (West 2002)), and unlawful possession of methamphetamine (720 ILCS 570/401(a)(6.5)(A) (West 2002)). Defendant pleaded not guilty.

In December 2002, defendant filed a motion to suppress evidence, alleging he was unconstitutionally seized when the arresting officer asked him for consent to search his vehicle. In February 2003, the trial court held an evidentiary hearing on the motion.

Logan County Sheriff's Deputy Aaron Pickett testified he initiated a traffic stop of defendant's vehicle on October 8, 2002, based on a broken windshield. Prior to stopping the vehicle, Pickett received a call regarding a motorist in need of assistance. He then received "a message on the computer," indicating a vehicle matching the description of the truck had been seen in the area and "was possibly involved in methamphetamine production." A detective had indicated the vehicle had been noticed "several times in the past weeks" and farmers had complained about the vehicle in the area.

Pickett approached the vehicle, and defendant handed him his driver's license and proof of insurance through a vent-glass window because the driver's-side window could not be lowered. Deputy Pickett returned to his vehicle as he had already decided to write defendant a warning ticket. He also ran a warrant check and confirmed defendant's driver information. Pickett wrote a warning ticket and approached defendant's vehicle again. He then handed defendant his driver's license and insurance card, and defendant reached through the vent-glass window to grab the items. Picket also handed defendant the written warning and explained he had 45 days to comply with the warning ticket and fix the windshield.

Deputy Pickett testified that while he handed defendant the warning, he asked him if he could "check" or "search" his vehicle. Defendant responded, " 'No problem.' " Defendant stepped out the passenger-side door because the driver's side was broken. As Deputy

Pickett walked around the vehicle, he noticed a broken window on the rear passenger side. Pickett "immediately noticed the smell of ether" and saw a can of Prestone "starting fluid with the cap off" behind the rear passenger compartment. Pickett patted down defendant and then searched the interior of his vehicle. Between the driver's seat and the center console, Deputy Pickett "pulled out a white plastic bag" that let off "a white puff of smoke" that turned out to be methamphetamine. He exited the vehicle and called the fire department for assistance.

The State played a videotape of the traffic stop taken from Deputy Pickett's squad car. Pickett testified he had been certified in methamphetamine production and awareness. When asked if defendant exhibited any physical characteristics that were consistent with methamphetamine users, Deputy Pickett indicated defendant had a "concave face" and "rotten teeth." He also stated defendant was "very skinny at the time of the stop."

On cross-examination by defense counsel, Deputy Pickett testified the only reason he stopped defendant's vehicle was for the broken windshield. Based on the videotape, Pickett agreed he asked defendant if he had anything unusual in his vehicle and defendant's answer was no. Pickett then asked if defendant minded if he searched the vehicle, and defendant consented. After he handed defendant the warning, his driver's license, and his insurance card, Deputy Pickett stated, defendant would have been free to leave. After receiving consent to search the vehicle, Pickett noticed the smell of ether and the can of starting fluid.

In March 2003, the trial court granted defendant's motion to suppress. The court found Deputy Pickett had reasonable grounds to make the traffic stop based on the cracked windshield. However, based on the totality of the circumstances, the court found that "once the officer handed over the ticket the purpose of the stop had been completed." The court concluded that anything beyond that "basically exceeds the scope of the stop" and granted the motion to suppress. The State filed a certificate of substantial impairment and appealed the court's ruling pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)).

## II. ANALYSIS

On appeal, the State argues the trial court erred in granting defendant's motion to suppress evidence. We agree.

### A. Standard of Review and Burden of Proof

■ In reviewing a motion to suppress on appeal, we are presented with mixed questions of law and fact. *People v. Smith*, 214 Ill. 2d 338,

347, 827 N.E.2d 444, 450 (2005). A trial court's assessment of witness credibility and factual determinations will be reversed only if manifestly erroneous. *People v. Anthony*, 198 Ill. 2d 194, 200-01, 761 N.E.2d 1188, 1191 (2001). However, the ultimate determination of whether the evidence is suppressed is entitled to *de novo* review. See *People v. Gipson*, 203 Ill. 2d 298, 304, 786 N.E.2d 540, 543 (2003).

On a motion to suppress evidence, the defendant has the burden of proving the search and seizure were unlawful (725 ILCS 5/114—12(b) (West 2002)). " 'However, once the defendant makes a *prima facie* showing of an illegal search and seizure, the burden shifts to the State to produce evidence justifying the intrusion.' " *People v. Reatherford*, 345 Ill. App. 3d 327, 334, 802 N.E.2d 340, 347-48 (2003), quoting *People v. Ortiz*, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000).

## B. The Traffic Stop

The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, the Illinois Constitution affords citizens with "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches[ ] [and] seizures." Ill. Const. 1970, art. I, § 6. Our supreme court has interpreted the search and seizure clause of section 6 in a manner consistent with the United States Supreme Court's fourth-amendment jurisprudence. See *Smith*, 214 Ill. 2d at 349, 827 N.E.2d at 451; *People v. Pitman*, 211 Ill. 2d 502, 513, 813 N.E.2d 93, 101 (2004); *People v. Gonzalez*, 204 Ill. 2d 220, 224, 789 N.E.2d 260, 264 (2003); *People v. Gherna*, 203 Ill. 2d 165, 176, 784 N.E.2d 799, 806 (2003); *People v. Bolden*, 197 Ill. 2d 166, 178-79, 756 N.E.2d 812, 820 (2001); *People v. Bull*, 185 Ill. 2d 179, 196, 705 N.E.2d 824, 833 (1998); *Fink v. Ryan*, 174 Ill. 2d 302, 314, 673 N.E.2d 281, 288 (1996); *People v. Mitchell*, 165 Ill. 2d 211, 219, 650 N.E.2d 1014, 1018 (1995); *People v. Lucente*, 116 Ill. 2d 133, 146, 506 N.E.2d 1269, 1274 (1987); *People v. Tisler*, 103 Ill. 2d 226, 245, 469 N.E.2d 147, 157 (1984).

■ When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation. *People v. Sorenson*, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001). A temporary detention of an individual during a vehicle stop constitutes a seizure of his person within the fourth amendment, even if the stop is brief and for a limited purpose. *Whren v. United States*, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996); *People v. Bunch*, 207 Ill. 2d 7, 13, 796 N.E.2d 1024, 1029 (2003) ("persons" seized during vehicle stop include the driver

and the passengers). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772.

> "Because a traffic stop is more analogous to a *Terry* investigative stop (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) than to a formal arrest, the reasonableness of a traffic stop is analyzed under *Terry* principles. [Citation.] A *Terry* analysis involves a dual inquiry: '(1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." ' *Gonzalez*, 204 Ill. 2d at 228[, 789 N.E.2d at 266], quoting *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879." *Bunch*, 207 Ill. 2d at 13-14, 796 N.E.2d at 1029.

■ In the case *sub judice*, no issue exists as to the legality of the initial stop of defendant's vehicle under the first prong of *Terry*. Deputy Pickett observed the subject's truck had a cracked windshield, a violation of the Illinois Vehicle Code (625 ILCS 5/12—503(e) (West 2002) (windshield must be unobstructed)). Thus, Deputy Pickett had probable cause to initiate a valid traffic stop here.

## C. Defendant's Arrest

■ Under the second prong of the *Terry* analysis, the length of the detention and the manner in which it was carried out are considered. *Bunch*, 207 Ill. 2d at 14, 796 N.E.2d at 1029. The United States Supreme Court has stated "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983) (plurality opinion). Upon initiating a minor traffic stop, a police officer may briefly detain the driver to request his driver's license and determine its validity and, under certain circumstances, conduct a speedy warrant check. *Ortiz*, 317 Ill. App. 3d at 220, 738 N.E.2d at 1018. Once a check of a driver's license and any warrant information is completed, "if no further suspicion is aroused, the traffic stop must cease and the individual should no longer be detained." *Ortiz*, 317 Ill. App. 3d at 220, 738 N.E.2d at 1018. The police officer should then issue a warning ticket and allow the driver to continue on his way. See *People v. Koutsakis*, 272 Ill. App. 3d 159, 164, 649 N.E.2d 605, 609 (1995).

■ In analyzing police questioning during the course of a traffic stop under the second prong of *Terry*, our supreme court has stated:

> " '[W]e must consider, as an initial matter, whether the question

is related to the initial justification for the stop. If the question is reasonably related to the purpose of the stop, no fourth[-]amendment violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law[-]enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no fourth[-]amendment violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.' " *Bunch*, 207 Ill. 2d at 16, 796 N.E.2d at 1030, quoting *Gonzalez*, 204 Ill. 2d at 235, 789 N.E.2d at 270.

Applying this framework to this case, Deputy Pickett's questions after he returned the driver's documents and instructed him to fix the windshield within 45 days were not related to the purpose of the stop—the cracked windshield. Instead, Pickett asked defendant if he had anything illegal in the truck. When defendant stated no, Pickett asked for consent to search the vehicle, to which defendant agreed.

Although Deputy Pickett's questions were not reasonably related to the purpose of the stop, we find the facts in this case establish a reasonable, articulable suspicion of criminal conduct that justified the questions. Through radio and computer communications, Deputy Pickett had learned a vehicle matching the description of defendant's had been seen in the area and complained about by farmers. The vehicle was suspected of being used in methamphetamine production. Moreover, Deputy Pickett testified he had received training and certification in methamphetamine awareness and that defendant exhibited physical characteristics of a methamphetamine user, namely a concave face, rotten teeth, and a skinny appearance. Thus, we conclude a reasonable, articulable suspicion of criminal activity was shown.

Defendant argues Deputy Pickett had no suspicions of any criminal activity. Even if defendant was correct, we would still find the trial court's order subject to reversal.

In so doing, we first consider whether Deputy Pickett restrained defendant's liberty such that it amounted to an unlawful detention. The United States Supreme Court has held a person is seized "when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). In determining whether a person has been seized, courts consider whether "if, in view of all of the circumstances surrounding the incident, a reasonable

person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

In *People v. Brownlee*, 186 Ill. 2d 501, 506, 713 N.E.2d 556, 559 (1999), police officers stopped a vehicle and approached the car on both sides. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. The officers obtained the identities of the occupants and checked for and found no outstanding warrants. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. The officers decided not to issue any citations, but they did agree to ask the driver for permission to search the car. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. One officer returned to the driver his license and insurance card and explained that no citations would be issued. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. Thereafter, the officers stood near the car's doors for about two minutes and said nothing. *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565-66. After the pause, the officer asked the driver to search the vehicle, and the subsequent search revealed controlled substances. *Brownlee*, 186 Ill. 2d at 506-07, 713 N.E.2d at 559-60.

The supreme court found the traffic stop had concluded when one officer returned the license and insurance card to the driver and explained that no citations would be issued. *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565. However, the officer's two-minute pause without saying anything to the driver constituted a show of authority that would lead a reasonable person to conclude he or she was not free to leave without the officers "soon be[ing] in hot pursuit." *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 566.

■ In this case, the purpose of the stop was complete when Deputy Pickett returned to defendant his license and insurance card, issued a warning citation for the windshield violation, and told him he had 45 days to fix the windshield. Deputy Pickett prolonged the stop by asking defendant whether he had anything illegal or unusual in the car and requesting permission to search the vehicle. This case is distinguishable from *Brownlee*, however. Here, no evidence indicated defendant would have believed he was not free to leave. Deputy Pickett returned the documents and told him to fix the windshield within 45 days. The questions posed and responses given took mere seconds. The deputy's actions here did not constitute a show of authority such that a reasonable person would not feel free to leave.

In *Brownlee*, 186 Ill. 2d at 515, 713 N.E.2d at 563, the supreme court noted "that an officer is always free to request permission to search." In that case, however, the court found the problem was not that the officers requested permission to search the car, but "that the officers unconstitutionally detained the car and its occupants *before* requesting permission to search the car, and after the conclusion of

the traffic stop." (Emphasis in original.) *Brownlee*, 186 Ill. 2d at 515, 713 N.E.2d at 563. Here, Deputy Pickett did not unlawfully detain defendant before he requested permission to search the vehicle.

*Mendenhall* sets forth several examples that may indicate a seizure, including (1) the threatening presence of several police officers, (2) the display of a weapon by an officer, (3) some physical touching of the citizen's person by the officer, and (4) the use of language or tone of voice indicating compliance with the officer's request might be compelled. *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. Absent any evidence of this nature, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Mendenhall*, 446 U.S. at 555, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877.

Applying the above principles to this case, we conclude defendant was not seized. The stop by a single officer occurred on a public roadway during the daytime. No weapon was displayed during the encounter and defendant was not physically touched by Deputy Pickett prior to his consent to the search. Further, Pickett did not use forceful language or a tone of voice that would indicate defendant's compliance was mandatory. Thus, the encounter did not amount to an unlawful seizure.

Moreover, the questions posed by Deputy Pickett amounted to a consensual encounter. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Royer*, 460 U.S. at 497, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324; see also *Muehler v. Mena*, 544 U.S. 93, 101, 161 L. Ed. 2d 299, 308, 125 S. Ct. 1465, 1471 (2005) (stating Supreme Court has " 'held repeatedly that mere police questioning does not constitute a seizure' "), quoting *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991). Further, the person to whom the questions are asked may refuse to answer and may proceed on his way. *Royer*, 460 U.S. at 497-98, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324; see also *Terry*, 392 U.S. at 32-33, 20 L. Ed. 2d at 912, 88 S. Ct. at 1885-86 (Harlan, J., concurring) (although police officer has the right to address questions to other persons, "ordinarily the person addressed has an equal right to ignore his interrogator and walk away").

> "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.

[Citation.] Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 216, 80 L. Ed. 2d 247, 255, 104 S. Ct. 1758, 1762-63 (1984).

In *Ohio v. Robinette*, 519 U.S. 33, 35, 136 L. Ed. 2d 347, 352, 117 S. Ct. 417, 419 (1996), Deputy Roger Newsome stopped the defendant, Robert Robinette, for speeding. Newsome received the defendant's license and ran a computer check. *Robinette*, 519 U.S. at 35, 136 L. Ed. 2d at 352, 117 S. Ct. at 419. Deputy Newsome then asked the defendant to exit his car, issued him a verbal warning, and returned his license. *Robinette*, 519 U.S. at 35, 136 L. Ed. 2d at 352, 117 S. Ct. at 419. Thereafter, Newsome asked the defendant if he was carrying any contraband, and the defendant replied he was not. *Robinette*, 519 U.S. at 35-36, 136 L. Ed. 2d at 352, 117 S. Ct. at 419. Deputy Newsome then received the defendant's consent to search his car, and the officer found controlled substances. *Robinette*, 519 U.S. at 36, 136 L. Ed. 2d at 352, 117 S. Ct. at 419.

The Supreme Court found the fourth amendment does not require a police officer to advise a lawfully seized defendant that he is free to go before a consent to search will be deemed voluntary. *Robinette*, 519 U.S. at 39-40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421. Instead, a valid consent will be found when it is voluntarily given, and " '[v]oluntariness is a question of fact to be determined from all the circumstances.' " *Robinette*, 519 U.S. at 40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059 (1973).

When Deputy Pickett asked defendant whether he had anything illegal in the vehicle, he could have refused to answer and proceeded on his way. Instead, defendant chose to answer in the negative. Then, Deputy Pickett asked for consent to search the vehicle. Again, defendant could have declined the request and driven away. The questions here were not of a nature that a person would feel his answer was required based on a show of authority. See *Gherna*, 203 Ill. 2d at 179, 784 N.E.2d at 807 ("[A] consensual encounter will lose its consensual nature if law[-]enforcement officers convey a message, by means of physical force or show of authority, that induces the individual to cooperate").

The fact that a police officer poses questions to a driver after the purpose of the traffic stop has concluded does not automatically amount to a seizure. In a consensual conversation, the officer could

pose questions to the driver or request consent to search the vehicle. Therein, the driver could decline to answer the officer's questions or refuse to give his consent. Unless the totality of the circumstances indicate a reasonable person would not have felt free to leave, no seizure has occurred and the defendant's consent to search the vehicle is not constitutionally prohibited.

In this case, there was no show of force, no brandishing of weapons, no blocking of the vehicle's path, no threat or command, and no authoritative tone of voice. Deputy Pickett did not exhibit his authority in an intimidating fashion. Instead, he simply asked defendant for consent to search his vehicle. The actions of and questions posed by Deputy Pickett were not of such a nature that defendant was forced to cooperate. "Police officers act in full accord with the law when they ask citizens for consent." *United States v. Drayton*, 536 U.S. 194, 207, 153 L. Ed. 2d 242, 255, 122 S. Ct. 2105, 2114 (2002). Here, the evidence demonstrates defendant's consent was voluntarily given. Thus, Pickett's questions did not violate defendant's fourth-amendment rights, and the trial court erred in granting the motion to suppress.

In his special concurrence, Justice Knecht argues we have failed to address the *Gonzalez* framework. Initially, we find *Gonzalez* factually inapplicable to the case before us. In *Gonzalez*, 204 Ill. 2d at 236, 789 N.E.2d at 270, the officer's request for the passenger's identification "was made during the course of the stop while the driver was being questioned by the other officer and did not impermissibly prolong defendant's detention." Here, we have noted Deputy Pickett's questions were not related to the purpose of the stop and did in fact prolong the stop. Our analysis need not end there, however.

Although we follow the legal framework set forth in *Gonzalez*, we find the facts of this case more closely related to the scenarios found in *Bunch* and *Brownlee*, where the questions asked by police officers occurred after the conclusion of the stops. In *Bunch*, 207 Ill. 2d at 16, 796 N.E.2d at 1030, the supreme court reiterated the general framework set forth in *Gonzalez*. The court found the police officer's questions of " 'What's your name? Where you [sic] coming from?' " were not related to the purpose of the stop and were not supported by a reasonable, articulable suspicion of criminal conduct. *Bunch*, 207 Ill. 2d at 16, 796 N.E.2d at 1030-31. In contrast to the facts in *Gonzalez*, the court stated the questioning of the defendant occurred "*after* the purpose of the stop was concluded." (Emphasis in original.) *Bunch*, 207 Ill. 2d at 17, 796 N.E.2d at 1031.

The supreme court did not end its analysis there but addressed the State's argument that the defendant and the officer engaged in a

consensual encounter. *Bunch*, 207 Ill. 2d at 17, 796 N.E.2d at 1031. Citing *Brownlee*, the court stated a person is seized if by show of force or authority, his freedom of movement is restrained. *Bunch*, 207 Ill. 2d at 18, 796 N.E.2d at 1031. In *Bunch*, 207 Ill. 2d at 19, 796 N.E.2d at 1032, the officer testified the purpose of the traffic stop concluded when he decided to have the vehicle towed and *directed* the defendant to exit the car. Further *directions* continued as the officer told the defendant to move to the rear of the car, positioned himself a foot from the defendant's face, and shined a flashlight in his face while asking " 'What's your name? Where you [*sic*] coming from?' " *Bunch*, 207 Ill. 2d at 19, 796 N.E.2d at 1032. The supreme court concluded "the officer's actions constituted a show of authority such that a reasonable person would conclude that he or she was not free to leave." *Bunch*, 207 Ill. 2d at 19, 796 N.E.2d at 1032.

Here, we have no such direction on the part of Deputy Pickett. He did not intimidate defendant or otherwise exhibit a show of authority such that a reasonable person in defendant's position would not feel free to leave. As we have previously discussed the supreme court's ruling in *Brownlee*, we reiterate that an officer is free to request permission to search the car after the conclusion of the traffic stop so long as the officer does not unlawfully detain the car or its occupants prior to requesting permission. See *Brownlee*, 186 Ill. 2d at 515, 713 N.E.2d at 563. In this case, Deputy Pickett did not unlawfully detain defendant after the conclusion of the traffic stop and thus his request to search was not constitutionally prohibited.

We have considered this case under the framework and facts set forth in *Gonzalez, Bunch*, and *Brownlee*. Our review of those cases leads us to conclude that the completion of the traffic stop does not in all respects muzzle a police officer and prohibit him or her from asking a vehicle's occupant for permission to search the car. Although Deputy Pickett's questions prolonged the stop, he did not unconstitutionally detain defendant or exhibit a show of authority such that any detention was unreasonable within the meaning of the fourth amendment.

Justice Knecht asks "whether a law-enforcement officer may, after the traffic stop is concluded, *ask* the driver whether he has anything illegal in his truck, and when the reply is negative, *ask* for permission to search." (Emphasis in original.) 362 Ill. App. 3d at 622. In the circumstances presented by this case, along with the fourth-amendment jurisprudence of our supreme court and the United States Supreme Court, we conclude the answer is yes. An officer may ask, not demand or direct, and the driver may refuse to answer and be on his way.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

MYERSCOUGH, J., concurs.

JUSTICE KNECHT, specially concurring:

I concur in the result because I am persuaded by the majority a reasonable, articulable suspicion of criminal activity existed. I write separately to suggest absent that suspicion, reversal would not be appropriate.

Simply put, Deputy Pickett's questions after the traffic stop was complete impermissibly prolonged Ramsey's detention—even if only briefly—and those questions changed the fundamental nature of the stop. Under *People v. Gonzalez*, 204 Ill. 2d 220, 235, 789 N.E.2d 260, 270 (2003), "[i]n the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop."

After the traffic stop was complete, Deputy Pickett asked defendant if he had anything illegal in the truck. Defendant answered no, but Pickett then asked for consent to search the vehicle. Defendant agreed.

The majority addresses the facts in *Gonzalez* but not the analysis and concludes the consent given by defendant was voluntary. The question is not whether the consent was voluntary. The question is whether a law-enforcement officer may, after the traffic stop is concluded, *ask* the driver whether he has anything illegal in his truck, and when the reply is negative, *ask* for permission to search. This is not a consensual encounter and facially innocuous dialog. Defendant had been stopped and "seized" by police. He received his warning ticket for a cracked windshield and was told to get the windshield fixed.

Then, the focus shifted and he was asked about contraband in his truck. Under any test, this changed the fundamental nature of the stop. We need not apply a stopwatch to the videotape to measure the lapse of time between the end of the traffic stop and the "illegal" reference followed by the request to search. His detention was prolonged, and the nature of the stop changed. Simply because the officer only issued a warning does not thereby render the stop a friendly, consensual encounter.

*Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417, does not resolve the issue in this case. The nuanced analysis in *Gonzalez* requires us to conclude the questions leading up to consent were not permissible.