NO. 4-05-0223     Filed: 1/4/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|      Plaintiff-Appellant, | ) | Circuit Court of |
|      v. | ) | Morgan County |
| LaDONNA M. BARKER, | ) | No. 04CF106 |
|      Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Richard T. Mitchell, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

In 2004, the State charged defendant, LaDonna M. Barker, with unlawful possession of methamphetamine-manufacturing chemical with intent to manufacture. 720 ILCS 570/401(d-5) (West 2004). In October 2004, defendant filed a motion to suppress evidence, which the trial court granted. The State appeals, arguing the trial court erred in granting defendant's motion to suppress evidence. We reverse and remand.

I. BACKGROUND

In June 2004, the State charged defendant with unlawful possession of methamphetamine-manufacturing chemical with intent to manufacture. 720 ILCS 570/401(d-5) (West 2004). She was a passenger in her own vehicle driven by Robert Shaffer on the night of June 26, 2004, when it was stopped for a traffic violation, malfunctioning headlights. 625 ILCS 5/12-201(b) (West 2004) (two functioning headlamps required). After the traffic stop was complete, the vehicle was searched and the alleged methamphetamine-manufacturing chemical found. In October 2004,

defendant filed a motion to suppress evidence alleging, among other things, (1) no search or arrest warrant justified the search and seizure; (2) the search had no reasonable connection to the traffic stop; and (3) no reasonable, articulable suspicion existed to search the vehicle once the traffic stop was complete.

In February 2005, the trial court conducted a hearing on the motion to suppress. Officer Adam Mefford was the only witness to testify. He was on patrol on Saturday evening, June 26, 2004. Officer Mefford saw a car heading toward him with only one headlight working. He stopped the vehicle because of the malfunctioning headlight. Officer Mefford informed the driver, Robert Shaffer, of the problem with the headlight. He asked for Shaffer's driver's license and insurance card. Defendant, a passenger in the vehicle, stated she owned the vehicle and would try to find the insurance card.

Shaffer told Officer Mefford he knew the headlight was not working and asked to exit the vehicle to try to get it to work. Officer Mefford agreed. He then told Shaffer he was going to issue him a written warning. Officer Mefford ran a computer check on Shaffer's driver's license and discovered Shaffer had a criminal history and had been convicted of a drug offense.

Officer Mefford returned to the vehicle and handed Shaffer the warning ticket. As he did so, he noticed a 12-pack of beer in the backseat with some containers missing. Officer Mefford knew it was legal to have an opened cardboard package of beer in the car, but he asked Shaffer if any of the containers of beer were open inside the vehicle. When Shaffer said "no," Officer Mefford asked Shaffer if he could search the vehicle to

ensure that fact.  Shaffer said "yes."  Officer Mefford testified no pause occurred between the return of Shaffer's license and warning ticket and either of his two questions.  The contraband in question was discovered during the search.

The trial court found the initial stop was a valid, proper traffic stop.  It then evaluated whether the questioning of Shaffer was reasonably related to the stop.  The court stated even though the partial 12-pack of beer was legal, it was proper for Officer Mefford to inquire if there were any open cans in the car.  However, once that question was answered in the negative, because the officer did not testify to anything else, such as the odor of alcohol, the request to search was not proper.  The partial 12-pack in the backseat did not create a reasonable suspicion of criminal activity.  Thus, the stop was impermissibly prolonged and the nature of the stop was changed.  Based on these findings, the trial court granted the motion to suppress.

This appeal followed.

## II. ANALYSIS

On appeal, the State argues the trial court erred in granting defendant's motion to suppress evidence.  We agree.

### A. Standard of Review

Reviewing a trial court's ruling on a motion to sup-press involves mixed questions of fact and law.  People v. Gherna 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003).  On review, we give great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence.  Gherna, 203 Ill. 2d at 175, 784 N.E.2d at 805.  However, we review the trial court's legal determination

- 3 -

of whether suppression is warranted under those facts <u>de</u> <u>novo</u>. <u>Gherna</u>, 203 Ill. 2d at 175, 784 N.E.2d at 805. Defendant had the initial burden of proving the search and seizure were unlawful on the motion to suppress evidence. 725 ILCS 5/114-12(b) (West 2004). "However, once the defendant makes a <u>prima</u> <u>facie</u> showing of an illegal search and seizure, the burden shifts to the State to produce evidence justifying the intrusion." <u>People v. Ortiz</u>, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000).

### B. Granting of Motion To Suppress

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their per-sons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The search and seizure language found in section 6 of article I of the Illinois Consti-tution is construed in a manner consistent with the United States Supreme Court's interpretation of the fourth amendment. Ill. Const. 1970, art. I, §6; <u>People v. Gonzalez</u>, 204 Ill. 2d 220, 224, 789 N.E.2d 260, 264 (2003).

The temporary detention of an individual during a vehicle stop is a seizure within the meaning of the fourth amendment. <u>Gonzalez</u>, 204 Ill. 2d at 225, 789 N.E.2d at 264. All occupants within the vehicle are considered to be seized. <u>Gonzalez</u>, 204 Ill. 2d at 225, 789 N.E.2d at 264.

Although traffic stops are often supported by probable cause, as in this case, the reasonableness of the stop is ana-lyzed under <u>Terry</u> principles (<u>Terry v. Ohio</u>, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968)). <u>Gonzalez</u>, 204 Ill. 2d at 226, 228, 789 N.E.2d at 265-66 (noting that "as a

- 4 -

general rule, a fourth amendment challenge to the reasonableness of a traffic stop is analyzed under <u>Terry</u> principles" and "<u>Terry</u> principles apply even in the presence of probable cause").

In <u>Terry</u>, the Court established a dual inquiry for deciding whether an investigative detention is reasonable: (1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." <u>Terry</u>, 392 U.S. at 20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.

In <u>Gonzalez</u>, the Supreme Court of Illinois set forth the analysis for determining whether police conduct during the course of a traffic stop satisfies <u>Terry</u>'s scope requirement. <u>Gonzalez</u>, 204 Ill. 2d at 235, 789 N.E.2d at 270. <u>Gonzalez</u> requires us to determine whether Officer Mefford's questioning of Shaffer was related in scope to the circumstances that justified the stop in the first place. If so, no fourth-amendment violation occurred. <u>Gonzalez</u>, 204 Ill. 2d at 235, 789 N.E.2d at 270. If the questioning was not reasonably related to the purpose of the stop, we must consider whether the law-enforcement officer had a reasonable, articulable suspicion that would justify the questioning. If the questioning is so justified, no fourth-amendment violation occurs. <u>Gonzalez</u>, 204 Ill. 2d at 235, 789 N.E.2d at 270. Absent a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion "we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop." <u>Gonzalez</u>, 204 Ill. 2d at 235, 789 N.E.2d at 270.

- 5 -

Applying Gonzalez to the facts here, we find under these circumstances, Officer Mefford had a reasonable, articulable suspicion to justify his questions as a matter of law after the traffic stop was complete. We find his request to search the vehicle was reasonable, and the driver gave his consent. We therefore reverse.

At issue is whether the trial court erred in granting defendant's motion to suppress, finding (1) it was proper for Officer Mefford to question Shaffer concerning any open beer containers but (2) once that question was answered in the negative, Officer Mefford had no reasonable, articulable suspicion of criminal activity and (3) the traffic stop was impermissibly prolonged and the nature of the stop was changed by Mefford's actions in asking for permission to search the vehicle.

The traffic stop in this case began when Officer Mefford observed the vehicle's malfunctioning headlights. The parties agree the traffic stop was otherwise complete when Officer Mefford handed the warning ticket to Shaffer. The State argues Officer Mefford's interaction with the driver was a consensual encounter not subject to Terry principles or, alternatively, if a seizure occurred, any detention would have been justified by reasonable suspicion of an open-container violation. Defendant responds (1) she and Shaffer continued to be seized when Officer Mefford asked Shaffer questions at the end of the traffic stop; (2) no reasonable, articulable suspicion justified Officer Mefford's request to search the vehicle; and (3) Officer Mefford's question immediately after the traffic stop was otherwise complete would make a reasonable person believe the stop was

- 6 -

not complete and he or she was not free to leave.  We disagree.

In applying the Gonzalez framework, we find Officer Mefford did not exceed the scope of the stop by asking if Shaffer had any open containers of beer in the car.  Once Shaffer answered in the negative, Officer Mefford asked if he could conduct a search to verify no open containers of beer were in the car.  The questions posed to Shaffer were not related to the initial justification for the stop for malfunctioning headlights, but the questions were based on a reasonable, articulable suspicion of criminal activity.

Officer Mefford made no mention of unusual odors emanating from the vehicle or of the occupants exhibiting any evidence of alcohol consumption.  He noted Shaffer had no outstanding warrants but had a previous conviction for a drug offense.  He also noted Shaffer was nervous and had a hard time sitting still.

Officer Mefford saw a 12-pack of beer in the backseat with some of the containers missing from the package.  Section 11-502 of the Illinois Vehicle Code (625 ILCS 5/11-502 (West 2002)) prohibits a driver or passenger from having any alcoholic liquor within any passenger area of any motor vehicle upon a highway except in the original container with the seal unbroken.  An officer encountering occupants of a vehicle late on a summer Saturday night with a 12-pack of beer minus a bottle or two would have reasonable suspicion to believe that criminal activity, i.e., drinking and driving, was afoot.  We note the decision in People v. Nadermann, 309 Ill. App. 3d 1016, 1021, 723 N.E.2d 857, 862 (2000), which held a ripped cardboard beer package holding

beer cans with some missing is by itself innocuous and not evidence of open individual containers of beer. That case involved the issue of probable cause, whereas this case involves reasonable suspicion.

Considering the number of drunk-driving arrests and accidents on Illinois roadways, asking whether any open containers were in the vehicle under these circumstances was based on a reasonable, articulable suspicion of criminal activity. See Michigan Department of State Police v. Sitz, 496 U.S. 444, 451, 110 L. Ed. 2d 412, 420, 110 S. Ct. 2481, 2485 (1990) (states have an interest in eradicating problem of drunk driving); King v. Ryan, 153 Ill. 2d 449, 461, 607 N.E.2d 154, 160 (1992) (Illinois has a "compelling interest in protecting its citizens from the hazards caused by intoxicated drivers"); Koeck v. Edgar, 180 Ill. App. 3d 332, 337, 535 N.E.2d 1019, 1022 (1989) (public has an interest in "curbing the epidemic number of deaths and injuries attributable to drunk driving by keeping unsafe drivers off the street"). It was a reasonable question, and it was good police work, considering the danger when citizens engage in drinking and driving.

Officer Mefford's second question as to whether he could search the vehicle to ensure there were no open containers was also based on a reasonable, articulable suspicion of criminal activity. Such a question was a reasonable follow-up that was justified by the situation. A driver of a vehicle who has been drinking and driving is not likely to meekly admit the presence of open containers and offer them up for inspection. Considering the importance of keeping our roadways safe, Officer Mefford's

request to search to ensure no open containers were present was not unreasonable.

We also find Officer Mefford's questions to the driver after the stop was complete amounted to a consensual encounter. Shaffer, as the driver of the vehicle, had authority to consent to the search even though defendant, the owner of the vehicle, was present as a passenger. "A driver of a vehicle has authority to consent to a search of the vehicle because he has immediate possession and control of the entire vehicle. [Citations.] This is true even when the owner of the vehicle is present and does not object to the search." People v. Sanchez 292 Ill. App. 3d 763, 769, 686 N.E.2d 367, 371 (1997); see also People v. Mendoza, 234 Ill. App. 3d 826, 835, 599 N.E.2d 1375, 1381 (1992) (driver has authority to consent to a vehicle search as the defendant, who was present, never objected to the search); People v. Harris, 199 Ill. App. 3d 1008, 1013, 557 N.E.2d 1277, 1280 (1990) ("a defendant assumes the risk that the driver will allow someone to look inside [the vehicle]"). In this case, defendant did not voice her objection to the search or limit Shaffer's consent. Thus, Shaffer had authority to consent to the search.

The facts of the present case are similar to those in our recent opinion in People v. Ramsey, 362 Ill. App. 3d 610, 839 N.E.2d 1093 (2005). In that case, a police officer stopped the defendant driver because of a cracked windshield. Ramsey, 362 Ill. App. 3d at 615, 839 N.E.2d at 1098. After returning the driver's documents, the officer asked him if he had anything illegal in the truck, and when the defendant stated no, the officer asked for consent to search the vehicle, to which the

- 9 -

defendant agreed. Ramsey, 362 Ill. App. 3d at 616, 839 N.E.2d at 1099.

This court found the officer had a reasonable, articulable suspicion of criminal activity. Ramsey, 362 Ill. App. 3d at 616, 839 N.E.2d at 1099. Moreover, we found the questions posed by the officer amounted to a consensual encounter. Ramsey, 362 Ill. App. 3d at 618, 839 N.E.2d at 1100.

> "The fact that a police officer poses questions to a driver after the purpose of the traffic stop has concluded does not automatically amount to a seizure. In a consensual conversation, the officer could pose questions to the driver or request consent to search the vehicle. Therein, the driver could decline to answer the officer's questions or refuse to give his consent. Unless the totality of the circumstances indicate a reasonable person would not have felt free to leave, no seizure has occurred and the defendant's consent to search the vehicle is not constitutionally prohibited." Ramsey, 362 Ill. App. 3d at 619-20, 839 N.E.2d at 1101-02.

As we noted in Ramsey, an officer may not demand or direct compliance, but in this case there was no show of force, brandishing of weapons, blocking of the vehicle's path, threats or commands, or an authoritative tone of voice. The questions posed by Officer Mefford did not force the driver to cooperate.

As a practical matter, it is unrealistic to say this was a friendly, innocuous encounter.  Officer Mefford sought information and wanted Shaffer to consent.  We believe many citizens would remain at the scene and comply with an officer's request believing they had no choice.  However, absent some show of authority beyond the verbal request, the law presumes a reasonable person would feel free to decline the request and depart.  "Police officers act in full accord with the law when they ask citizens for consent."  United States v. Drayton, 536 U.S. 194, 207, 153 L. Ed. 2d 242, 255, 122 S. Ct. 2105, 2114 (2002).  Here, the evidence demonstrates Shaffer's consent was voluntarily given.

### III. CONCLUSION

We reverse the trial court's grant of defendant's motion to suppress and remand.

Reversed and remanded.

STEIGMANN, P.J., and TURNER, J., concur.