No. 3–07–0243

Filed June 26, 2008

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) | for the 14th Judicial Circuit, |
| | ) | Henry County, Illinois |
| | ) | |
| v. | ) | No. 06–CF–438 |
| | ) | |
| PETER BERNSTEIN, | ) | Honorable |
| Defendant-Appellant. | ) | Larry S. Vandersnick, |
| | ) | Judge, Presiding |

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant Peter Bernstein was arrested following a traffic stop and charged with unlawful possession with intent to deliver cannabis and unlawful possession of cannabis. He filed a motion to suppress evidence which the trial court denied. A stipulated bench trial ensued after which the trial court found Bernstein guilty of unlawful possession with intent to deliver and sentenced him to a term of probation of 48 months. Bernstein appeals the denial of his motion to suppress. We reverse the trial court's denial of his motion, vacate his conviction and sentence, and remand.

FACTS

On November 20, 2006, defendant Bernstein was stopped on Interstate 80 in Henry County for speeding and an expired license plate. The stop was executed by Illinois State Police Sergeant Floyd Blanks, using his flashing MARS lights, which activated his squad car's videotape recording equipment. The videotape of the traffic stop establishes that the following occurred. After

approaching Bernstein's car, Blanks informed Bernstein that he was exceeding the speed limit but the officer's concern was the vehicle's expired plates. Blanks requested and received Bernstein's driver's license and insurance and registration information. Bernstein explained to Blanks that he had a one-way trip permit, which Blanks verified was adhered to the windshield. Blanks took Bernstein's documents back to his squad car and called the information into the dispatch center.

Approximately 12 minutes after the stop began, Blanks signaled for Bernstein to join him in the squad car. Bernstein complied and the two engaged in conversation. Bernstein explained that he had bought the vehicle on E-bay and was driving it home to Massachusetts, where he owned a vehicle repair shop. While in California, he visited his brother and did some repair work on the vehicle. Sixteen minutes after the stop began, Blanks handed the warning citation to Bernstein and asked for his signature. The two continued to discuss Bernstein's purchase of the vehicle and his repair business in Massachusetts. At this point, Blanks still had Bernstein's documents. He then stated, "All righty [*sic*]," and told Bernstein to have a safe trip and a nice day. Immediately thereafter, and before Bernstein was able to exit the squad car, Blanks inquired if he could ask Bernstein a couple of questions. He proceeded to inquire whether Bernstein had anything illegal in the vehicle, whether he was asked to transport anything, and whether the vehicle was modified to conceal contraband such as weapons or narcotics. Blanks then asked Bernstein whether he could take a "quick look" and, after Bernstein agreed, thanked him for his patience and cooperation.

While investigating the interior of the trunk, Blanks notified Bernstein that the upholstery on the backseat was glued down and stapled. Bernstein told Blanks he could pull up the glued section. Blanks proceeded to enter the backseat of the vehicle and continued searching until he located a package in a compartment under the backseat. Blanks told Bernstein to remain at the front

of the car and returned to his squad car where he called for backup, telling the dispatcher that Bernstein had a history of assault and battery on a cop and he had a bad feeling about him. Bernstein and Blanks each remained in their respective vehicles for the next 24 minutes while awaiting the arrival of a backup officer. When the backup officer arrived, he patted down Bernstein and confirmed that there was a package under the seat. The two officers continued waiting for a third officer with a canine who arrived six minutes later. Bernstein was cuffed, and it was determined that the package under the seat contained cannabis.

Bernstein was thereafter charged with unlawful possession with intent to deliver cannabis and unlawful possession of cannabis. 720 ILCS 550/5(f), 4(f) (West 2006). He filed a motion to suppress evidence, arguing that the traffic stop was unlawfully prolonged and that the character of the stop was changed from a traffic stop to an investigation of unrelated criminal activity. A hearing on his motion was held at which Bernstein testified to the following. Blanks began to ask him additional questions at the same time he handed Bernstein his documents. Because Blanks was asking questions, Bernstein did not want to walk away and was not sure he could leave. Bernstein explained that when an officer asks you to cooperate, you do so. He did not feel he was free to leave and he would have left if he had felt free to do so. Blanks was in uniform and Bernstein could see his gun. Blanks testified at the hearing as follows. After he began asking Bernstein additional questions, Bernstein asked him if he would like to take a look in the vehicle; he then requested a "quick look" to cover himself. At no time did he smell cannabis or see anything illegal in the vehicle. He did not think Bernstein was driving under the influence. He had his lights activated at all times during the stop. Following the presentation of testimony and argument, the trial court found that the initial lawful seizure of Bernstein had concluded, that there was no second seizure but a

consensual encounter. The court denied Bernstein's motion to suppress. Bernstein filed a motion to reconsider the denial of his motion to suppress and a hearing ensued on the motion after which the motion to reconsider was denied. A stipulated bench trial was held. The State dismissed the unlawful possession of cannabis charge and the trial court found Bernstein guilty of unlawful possession of cannabis with intent to deliver. The trial court sentenced Bernstein to 48 months' probation and imposed fines and fees. Bernstein appealed.

ANALYSIS

The sole issue on appeal is whether the trial court erred when it denied Bernstein's motion to suppress evidence and his motion to reconsider the denial of the motion to suppress. Bernstein argues that the denial was improper because he was subjected to a prolonged detention and improper questioning without reasonable suspicion of criminal activity which rendered invalid any consent to the search. When reviewing a trial court's ruling on a motion to suppress, we will not disturb the trial court's factual findings unless manifestly erroneous. People v. Sorenson, 196 Ill. 2d 425, 430-31, 752 N.E.2d 1078, 1083 (2001). We review *de novo* a defendant's legal challenge to the denial of his motion to suppress. Sorenson, 196 Ill. 2d at 431, 752 N.E.2d at 1083.

We begin with Bernstein's first contention, that Blanks unlawfully prolonged the traffic stop for the sole purpose of interrogating him regarding criminal activity in violation of the fourth amendment of the United States Constitution. U.S. Const., amend. IV. He argues that the trial court erred in determining that the initial lawful seizure had ended and that Blanks did not need a reasonable suspicion of criminal activity to continue Bernstein's detention. He also argues that the trial court erroneously found that there was no coercion preventing Bernstein from leaving after receiving his documents and that his consent to the subsequent search of his vehicle was voluntary.

4

The temporary detention of an individual during a traffic stop constitutes a seizure under the fourth amendment and is subject to the fourth amendment's requirement of reasonableness. Whren v. United States, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996). The reasonableness of a traffic stop is analyzed under the dual inquiry set forth in Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). People v. Brownlee, 186 Ill. 2d 501, 518-19, 713 N.E.2d 556, 565 (1999). Pursuant to Terry, an officer may conduct a brief, investigatory stop of individuals, absent probable cause to arrest, provided the officer has a reasonable, articulable suspicion of criminal activity. Terry, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Under the Terry dual inquiry, we consider "whether the officer's action was justified at its inception," and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.

The trial court relied on People v. Mendoza, 364 Ill. App. 3d 564, 846 N.E.2d 169 (2006), in finding that the traffic stop ended when Blanks returned Bernstein's documents and in concluding that the subsequent encounter was not a seizure but was a consensual encounter and Bernstein's consent to search voluntary. The Mendoza court noted that a traffic stop seizure concludes when the officer returns the driver's documentation and issues either a warning or a ticket. Mendoza, 364 Ill. App. 3d at 574, 846 N.E.2d at 177. Under Mendoza, once the traffic stop has ended, the proper analysis as to the constitutionality of an officer's continued questioning is whether the questions amounted to a second seizure. Mendoza, 364 Ill. App. 3d at 574, 846 N.E.2d at 177.

The State argues that People v. Ramsey, 362 Ill. App. 3d 610, 839 N.E.2d 1093 (2005), is applicable to the instant facts. In Ramsey, the defendant was stopped for a broken windshield, and after the officer returned Ramsey's documents and a warning citation, he asked if he could check

5

Ramsey's vehicle. Ramsey, 362 Ill. App. 3d at 612, 839 N.E.2d at 1096. Ramsey agreed, and the officer found contraband during the subsequent search. Ramsey, 362 Ill. App. 3d at 612-13, 839 N.E.2d at 1096. The trial court granted Ramsey's motion to suppress, finding that the traffic stop was completed when the officer returned Ramsey's information and that the subsequent search exceeded the scope of the stop. Ramsey, 362 Ill. App. 3d at 613, 839 N.E.2d at 1096-97. The reviewing court reversed, holding that after his documents were returned, Ramsey was free to go and that the officer's actions did not amount to a show of authority such that they constrained Ramsey's freedom to leave. Ramsey, 362 Ill. App. 3d at 617, 839 N.E.2d at 1100. The Ramsey court found that the defendant was not subjected to a second seizure as the additional questions constituted a consensual encounter. Ramsey, 362 Ill. App. 3d at 618, 839 N.E.2d at 1100.

In contrast, Bernstein argues that the facts of this case are more aligned with the facts in People v. Goeking, 335 Ill. App. 3d 321, 780 N.E.2d 829 (2002). In Goeking, an officer stopped a teenage driver for failing to signal when she pulled away from the curb. Goeking, 335 Ill. App. 3d at 322, 780 N.E.2d at 830. After running a check on the driver and the car's occupants, he asked the driver to step out of the car as he suspected she was driving under the influence. Goeking, 335 Ill. App. 3d at 322, 780 N.E.2d at 830. After ascertaining that she was not, he issued a verbal warning and told the driver she was free to go. Goeking, 335 Ill. App. 3d at 322, 780 N.E.2d at 830. As she was returning to her vehicle, the officer began questioning her as to the presence of contraband in the vehicle and obtained her consent to a search during which he found items containing drug residue. Goeking, 335 Ill. App. 3d at 322-23, 780 N.E.2d at 830. The trial court granted her subsequent motion to suppress, holding that, under all the circumstances, a reasonable person in the driver's position would not have felt free to leave and was thus seized. Goeking, 335 Ill. App. 3d

6

at 324, 780 N.E.2d at 832-33. The reviewing court affirmed the trial court's finding that the driver did not feel she had a choice in consenting to the officer's request to search her vehicle and thus her consent was involuntary. Goeking, 335 Ill. App. 3d at 324, 780 N.E.2d at 832.

The circumstances in the case at bar establish that Blanks began questioning Bernstein at the same time he returned Bernstein's documents and the warning citation. The trial court determined that the traffic stop concluded when Blanks gave Bernstein back his documents and the warning citation. We disagree. We do not consider Blanks' superficial termination of the traffic stop to have concluded it. Blanks returned the documents and immediately began posing questions to Bernstein. Blanks inserted his request to ask more questions in the "seamless transition between mandatory and 'consensual' interaction." People v. LaPoint, 353 Ill. App. 3d 328, 333, 818 N.E.2d 865, 869 (2004). There was an insufficient passage of time or a perceivable shift in Blanks' authoritative stance such that a reasonable person in Bernstein's position would have recognized that the traffic stop had ended and a consensual encounter begun. While Blanks did not tell Bernstein he was required to answer the additional questions, the evidence indicates that Blanks had not inquired about the presence of contraband at any prior point during the traffic stop and Blanks testified that he asked the questions in order to elicit incriminating information from Bernstein. Bernstein testified that because Blanks was asking questions, he felt he had to cooperate. He further testified that he did not feel free to leave.

We find the facts in Goeking similar to the instant facts and agree with Goeking's reasoning that a voluntary encounter following a traffic stop would be rare. Goeking, 335 Ill. App. 3d at 324, 780 N.E.2d at 831. We find compelling that the Goeking court determined that although the defendant was walking to her vehicle after the return of her documents, she did not feel free to leave.

7

Goeking, 335 Ill. App. 3d at 324, 780 N.E.2d at 831-32. In the case at bar, Bernstein was seated in Blanks' squad car when the additional questioning began. That fact alone distinguishes the instant circumstances from those in Ramsey on which the State and the trial court relied. In that case, the the defendant was seated in his vehicle when the officer returned his documents. Ramsey, 362 Ill. App. 3d at 612, 839 N.E.2d at 1096. We thus conclude that the traffic stop had not concluded when Blanks began questioning Bernstein anew. Accordingly, we now examine whether the stop violated Bernstein's fourth amendment rights.

An officer's observation of a traffic violation justifies a traffic stop and satisfies the first prong of the Terry analysis. Mendoza, 364 Ill. App. 3d at 569, 846 N.E.2d at 173. Analysis under Terry's second prong requires consideration of the length of the detention and the manner in which it was carried out. People v. Bunch, 207 Ill. 2d 7, 14, 796 N.E.2d 1024, 1029 (2003). An investigative stop should be temporary, lasting no longer than needed to effectuate its purpose, and the investigative methods used should be the least intrusive to address the officer's suspicions in the shortest time period. Bunch, 207 Ill. 2d at 14, 796 N.E.2d at 1029. To determine whether police questioning during a traffic stop satisfies Terry's second-prong analysis, a three-part framework is used. People v. Gonzalez, 204 Ill. 2d 220, 235, 789 N.E.2d 260, 270 (2003), *overruled in part on other grounds,* People v. Harris, 228 Ill 2d 222 (2008). As an initial matter, the first consideration is whether the question is related to the purpose of the traffic stop. Gonzalez, 204 Ill. 2d at 235, 789 N.E.2d at 270. If reasonably related, the fourth amendment is not violated. Gonzalez, 204 Ill. 2d at 235, 789 N.E.2d at 270. If the question is not reasonably related, we next consider whether the officer had a reasonable, articulable suspicion that justifies the question. Gonzalez, 204 Ill. 2d at 235, 789 N.E.2d at 270. If the officer does, there is no fourth amendment violation. Gonzalez, 204

Ill. 2d at 235, 789 N.E.2d at 270. If the officer lacks a reasonable, articulable suspicion, we determine whether, considering all the circumstances and in light of common sense, the question impermissibly prolonged the stop. Gonzalez, 204 Ill. 2d at 235, 789 N.E.2d at 270.

We acknowledge that the three-part framework established in Gonzalez has been overruled in part by the Illinois Supreme Court's recent decision in People v. Harris, 228 Ill. 2d 222 (2008). Relying on the decisions in Illinois v. Caballes, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005), and Muehler v. Mena, 544 U.S. 93, 161 L. Ed. 2d 299, 125 S. Ct. 1465 (2005), the Harris court concluded that the duration prong of the Gonzalez framework is all that survives as the sole focus of the inquiry as to the reasonableness of a traffic stop. Harris, 228 Ill. 2d at 244. Because our conclusion in the instant case focuses only on the duration of the traffic stop, Harris does not affect our analysis.

We begin our analysis of the instant facts with the determination that Blanks was justified in executing the traffic stop of Bernstein, based on his observation that Bernstein was speeding and his belief, albeit erroneous, that Bernstein was driving with an expired license plate. Thus, the first prong under Terry is satisfied. To analyze the instant traffic stop under Terry's second prong, we employ the three-part framework set forth in Gonzalez. Our first consideration is whether Blanks' questions were related to the purpose of the traffic stop. The questions at issue which Blanks asked Bernstein concerned whether he was carrying anything illegal, whether he was asked to transport any contraband and whether the vehicle was modified to conceal unlawful items. We conclude that none of the questions related to the traffic violation of speeding. We next consider whether Blanks had a reasonable, articulable suspicion justifying his questions and find that he did not. At the suppression hearing, Blanks testified that he did not smell cannabis or see anything illegal during the

9

stop and he did not believe that Bernstein was driving under the influence. As Blanks lacked a reasonable, articulable suspicion of criminal activity, we lastly consider whether, under all the circumstances and in light of common sense, the questions impermissibly prolonged the stop. We find that they did. The videotape establishes that Blanks handed Bernstein his documents and, at the same time, began asking Bernstein the unrelated questions. He requested a "quick look," and began searching Bernstein's vehicle at that time. After searching for nearly seven minutes, Blanks found what he believed to be an unlawful package under the backseat. At this time, approximately 28 minutes had elapsed since the traffic stop began. The circumstances and common sense dictate the conclusion that the traffic stop was impermissibly prolonged.

Based on our above analysis, we find that the instant traffic stop was not a brief encounter using the least intrusive means and hold that the stop violated Bernstein's fourth amendment rights. Because an illegal detention occurred, we find Bernstein's subsequent consent to search involuntary. As the cannabis was discovered as a result of an illegal seizure, it must be suppressed as fruit of the poisonous tree. Brownlee, 186 Ill. 2d at 521, 713 N.E.2d at 566. The trial court erred in denying Bernstein's motion to suppress. We therefore reverse the trial court's denial of the motion to suppress and vacate Bernstein's conviction and sentence.

For the foregoing reasons, the judgment of the circuit court of Henry County is vacated in part and reversed and remanded.

Vacated in part, reversed and remanded.

McDADE, P.J., and HOLDRIDGE, J., concur.