NO. 4-05-0672                                    Filed 1/9/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| RONALD R. COLE, | ) | No. 05CF64 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott H. Walden, |
| | ) | Judge Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 2005, after a stipulated bench trial, the trial court found defendant, Ronald R. Cole, guilty of unlawful possession of 100 grams or more but less than 400 grams of cocaine (720 ILCS 570/402(a)(2)(B) (West 2004)). In August 2004, the court sentenced defendant to 12 years' imprisonment. Defendant appeals, arguing the court erred in denying his motion to suppress evidence. We agree and reverse.

I. BACKGROUND

On February 7, 2005, the State charged defendant with (1) unlawful possession with intent to deliver 100 grams or more but less than 400 grams of a substance containing cocaine (count I) (720 ILCS 570/401(a)(2)(B) (West 2004)); (2) unlawful possession with intent to deliver 15 grams or more but less than 100 grams of a substance containing cocaine (count II) (720 ILCS 570/401(a)(2)(A) (West 2004)); (3) unlawful possession of 100 grams or more but less than 400 grams of cocaine (count III) (720 ILCS 570/402(a)(2)(B) (West 2004)); and (4)

unlawful possession with intent to deliver 30 grams or more but less than 500 grams of cannabis (count IV) (720 ILCS 550/5(d) (West 2004)). On March 16, 2005, defendant filed a motion to suppress evidence.

On May 2, 2005, the trial court held a hearing on defendant's motion to suppress. Defendant called Nicholas Hiland to testify. Officer Hiland testified he had been employed by the Quincy police department since September 2004. On February 4, 2005, Officer Hiland stopped a four-door maroon vehicle driven by defendant on the basis that "[t]he vehicle had an obstructed vision." The obstruction was the sole traffic violation Officer Hiland observed.

When asked the statutory authority for the traffic stop, Officer Hiland testified as follows:

"The regulation of the obstructed vision. I cannot state word-for-word, but I do know the exact law. It is anything hanging between the driver, hanging or suspended between the driver and the front windshield."

When presented with a copy of the statute (625 ILCS 5/12-503(c) (West 2004)), however, Officer Hiland agreed the statute required the item "materially obstruct" the driver's vision but still insisted that the law prohibited anything hanging between the driver and the windshield:

"Q. [(By DEFENSE COUNSEL):] Okay. So, the Illinois state rule is that the item must materially obstruct the vision; correct?

A. That's how the statute reads.

Q. Now, would you agree with me, there can be obstruc-

tions that are not material?

A. Sir, I enforce the statute. In my previous vehicle stops, I have stopped vehicles with small items to large items. I enforce the statute. I do not sit in my vehicle and decide what is what. I enforce the statute, sir. That's my job.

Q. So, do you stop every vehicle that has something hanging between the driver and the windshield?

A. Yes, sir. If I can get a vehicle stopped, I do stop every vehicle.

Q. Is that your understanding of what Illinois law prohibits?

A. Yes, sir.

Q. In your opinion, the Illinois law prohibits anything hanging between the driver and the windshield, whether or not it is a material obstruction?

A. It reads in the statute, sir, pretty clear.

Q. Okay. That's your opinion of the statute, is that the statute does not allow anything hanging in between the window, windshield and the driver?

A. Yes."

Officer Hiland had never had any training about what constitutes a material obstruction.

According to Officer Hiland, the item hanging from the rearview mirror that day

was a strand of beads, which was admitted into evidence. Officer Hiland testified the beads were "hanging straight down from his windshield." He could not state exactly how far the beads hung down but believed it was more than two inches. Officer Hiland did not know the diameter of the beads. He testified that an air freshener would be smaller than the beads.

After stopping defendant's vehicle, Officer Hiland informed defendant that if everything checked out with his license, Hiland would issue defendant a written warning. After reviewing the videotape (which was played for the trial court but not admitted into evidence and, therefore, not contained in the record on appeal), Officer Hiland testified that during the stop, he told defendant it was illegal to have anything between the rearview mirror and the windshield. Officer Hiland also agreed, after reviewing the videotape, that he told defendant "it was really no big deal" and he was going to issue a warning.

Officer Hiland asked defendant for his driver's license as he typically did for every stop he conducted. Officer Hiland "ran the number" and learned defendant's Indiana license was suspended, and defendant had no valid Illinois driver's license. Officer Hiland arrested defendant and searched him. Officer Hiland found $3,000 cash on defendant's person. After Officer Hiland secured defendant in the back of his patrol car, he searched the interior of defendant's vehicle. Officer Hiland found cellular phones and a small amount of marijuana.

Officer Hiland then called his sergeant to confirm whether he could open the trunk of defendant's car. Upon searching the trunk, Officer Hiland found cocaine.

On cross-examination, Officer Hiland testified he found approximately 100 grams of cocaine in the trunk, approximately 28.6 grams of cannabis in the trunk, and about 9.6 grams of marijuana in the backseat.

Upon questioning by the trial court, Officer Hiland explained that he was driving behind defendant's vehicle when he observed the beads hanging down from the rearview mirror in a single strand. When asked whether the beads extended as low as defendant's eyes, Officer Hiland replied, "[y]es."

On redirect by defense counsel, Officer Hiland testified as follows about why he stopped defendant's vehicle:

"Q. Would you, did you stop because the beads were actually an obstruction or because they were just a violation of the law?

A. No.

Q. As you read it?

A. I stopped him because they were an obstruction.

Q. Did you feel that those beads actually hindered [defendant] from observing other drivers from the windshield of the vehicle?

A. Yes.

Q. That was one strand hanging down; correct?

A. Yes, sir."

On recross-examination by the State, Officer Hiland testified he believed the beads hung down at least four inches. He also stated that the fact that defendant was traveling on Broadway Street-- the most traveled street in Quincy--did not affect his decision to give defendant a written warning. The beads were admitted into evidence, and the parties agreed it was "fair to character-

- 5 -

ize" the diameter of the beads as approximately one-fourth of an inch.

After hearing argument from counsel, the trial court took the matter under advisement. On May 23, 2005, the court entered its written order on the motion to suppress. The court made the following factual findings: Officer Hiland was traveling on Broadway Street, the busiest street in Quincy, when he came up behind defendant's vehicle. Officer Hiland observed a strand of beads in defendant's vehicle hanging down as low as defendant's eyes. Believing any object suspended between the driver and the front windshield was an automatic violation of section 12-503(c) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/12-503(c) (West 2004)), the officer initiated a traffic stop. Officer Hiland told defendant it was "no big deal" and indicated he was planning to give defendant a warning if everything "checked out." From outside the driver's door, Officer Hiland could see a single strand of opaque beads that were one-fourth of an inch in diameter hanging from the rearview mirror. After obtaining defendant's driver's license to write a written warning, Officer Hiland learned defendant's Indiana license was revoked and defendant did not have a valid Illinois license. Officer Hiland arrested defendant for the license violation and searched the interior of car. Officer Hiland found cannabis in the backseat. He then searched the trunk of the car where he found cocaine.

The trial court first addressed whether Officer Hiland had probable cause or reasonable, articulable suspicion of criminal activity to stop defendant's vehicle. While noting that even though Officer Hiland apparently was not aware of the language in section 12-503(c) that the suspended object must "materially obstruct[] the driver's view" (625 ILCS 5/12-503(c) (West 2004)), the fact that Officer Hiland saw defendant traveling on a busy street with what appeared to be a string of beads suspended at the driver's eye level between defendant and the

front windshield constituted reasonable, articulable suspicion that defendant was in violation of section 12-503(c) of the Vehicle Code.

The trial court further found that once Officer Hiland made the stop and could see the strand of beads, he had to have probable cause that the statute was violated to extend the stop by asking for defendant's driver's license. The court found probable cause existed on the following basis:

"The beads were opaque and hung to the defendant's eye level. While it was just a single strand of beads and the beads were just 1/4 inch in diameter, the question of material obstruction must be considered in the context of driving a moving vehicle on a busy street. Just as a penny held in front of the eye can obscure the sun, so can a bead in front of the eye obscure, even if just briefly, a distant stop sign or ball of a child that rolls into the street a block or two ahead."

On June 6, 2005, defendant waived his right to a jury trial, and the cause was continued for a stipulated bench trial. On June 22, 2005, the parties filed a statement of stipulated facts. The State proceeded only on count III and agreed defendant's sentence would not exceed 18 years' imprisonment. The parties stipulated that defendant was not pleading guilty or admitting guilt, and the parties were proceeding with a stipulated bench trial to preserve defendant's right to appeal the trial court's ruling on his motion to suppress evidence. The court found defendant guilty on count III. The State dismissed the remaining counts. On August 4, 2005, the court sentenced defendant to 12 years' imprisonment.

- 7 -

This appeal followed.


## II. ANALYSIS

Defendant argues the trial court erred by denying his motion to suppress. Specifically, defendant claims the traffic stop was not justified because Officer Hiland believed that all suspended objects violated section 12-503(c) of the Vehicle Code and never testified that the beads materially obstructed defendant's view. Defendant further argues that even if Officer Hiland had testified that the beads materially obstructed defendant's view, that belief was unreasonable. The State argues Officer Hiland testified the beads were larger than an air freshener, extended down from the rearview mirror as low as defendant's eyes, obstructed defendant's view, and actually hindered defendant's ability to observe other drivers. The State concludes that even if Officer Hiland mistakenly believed the statute prohibited any object, Officer Hiland provided specific, articulable facts supporting the traffic stop.

### A. Standard of Review

In People v. Pitman, the Illinois Supreme Court set forth the appropriate standard of review of a motion to suppress:

"In reviewing a circuit court's ruling on a motion to suppress, mixed questions of law and fact are presented. Findings of historical fact made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the

credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. [Citations.] However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. [Citations.] Accordingly, we review de novo the ultimate question of whether the evidence should be suppressed. [Citation.]" People v. Pitman, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100-01 (2004).

B. Officer Hiland's Traffic Stop Based on a
Mistake of Law Was Unconstitutional

The temporary detention of an individual during a vehicle stop is a seizure within the meaning of the fourth amendment and is subject to the reasonableness requirement of Terry v. Ohio, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968). Whren v. United States, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996); People v. Ramsey, 362 Ill. App. 3d 610, 614-15, 839 N.E.2d 1093, 1097-98 (2005). A Terry analysis requires a dual inquiry: "(1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." People v. Hall, 351 Ill. App. 3d 501, 503, 814 N.E.2d 1011, 1015 (2004). Here, the issue is the lawfulness of the initial stop of defendant's vehicle.

A traffic violation generally provides a sufficient basis for a traffic stop. People v. Rozela, 345 Ill. App. 3d 217, 225, 802 N.E.2d 372, 379 (2003). "A police officer may make a valid traffic stop where the officer is able to point to specific and articulable facts which, when

taken together with the rational inferences therefrom, reasonably warrant the stop of the defendant's vehicle." Rozela, 345 Ill. App. 3d at 225, 802 N.E.2d at 379.

Officer Hiland testified he stopped defendant for a violation of section 12-503(c) of the Vehicle Code. Section 12-503(c) provides as follows:

"No person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield, rear window, side wings[,] or side windows immediately adjacent to each side of the driver which materially obstructs the driver's view." 625 ILCS 5/12-503(c) (West 2004).

Officer Hiland testified that anything suspended between the driver and the front windshield violated section 12-503(c). He was, as the trial court found, unaware of the language in the statute requiring the suspended object materially obstruct the driver's view. Consequently, Officer Hiland acted under a mistake of law.

Although this court's research has failed to uncover any Illinois cases addressing a traffic stop based on a police officer's mistake of law, the majority of federal courts of appeal have concluded that traffic stops premised on a mistake of law are generally unconstitutional, even if the mistake is reasonable and in good faith. See United States v. Coplin, 463 F.3d 96, 101 (1st. Cir. 2006) (noting that stops premised on mistakes of law are generally unconstitutional but finding the mistake at issue was a mistake of fact); United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) (finding that, because driving straight with an engaged turn signal does not violate Texas law, the police officer had no objective basis for probable cause to justify the stop); United States v. McDonald, 453 F.3d 958, 962 (7th Cir. 2006) (finding that a police officer's

mistake of law cannot support probable cause to conduct a stop even though the officer genuinely believed the defendant had violated the law when he did not turn after engaging his signal); United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000) (finding that police officer did not have reasonable suspicion to support the traffic stop even though he had a good-faith, mistaken belief that the vehicle code required the registration sticker be visible from the rear of the vehicle); United States v. Tibbetts, 396 F.3d 1132, 1138-39 (10th Cir. 2005) (noting that a mistake of law is not objectively reasonable but remanding the case for a determination by the trial court as to whether the officer's belief that the law was violated was a reasonable mistake of fact or an impermissible mistake of law); United States v. Chanthasouxat, 342 F.3d 1271, 1278-79 (11th Cir. 2003) (finding that an officer's mistaken belief that the lack of an interior rearview mirror violated state law did not provide grounds for reasonable suspicion or probable cause to justify the traffic stop even though the officer had written over 100 tickets for the violation, was trained that it was the law, and was told by a magistrate that the lack of a rearview mirror violated the law). In particular, the courts conclude that a traffic stop must be supported by probable cause or reasonable suspicion, and a subjective belief that a law has been broken when no violation actually occurred is not objectively reasonable. See, e.g., McDonald, 453 F.3d at 962.

The Eighth and Third Circuits have either disagreed with or distinguished these cases. The Eighth Circuit has held that objectively reasonable mistakes of law can support probable cause. United States v. Washington, 455 F.3d 824, 826, 827 (8th Cir. 2006) (but finding that police officer's mistaken belief that vision-obstruction statute applied to cracked windshields was not objectively reasonable). The Third Circuit, in United States v. Delfin-

- 11 -

Colina, 464 F.3d 392 (3d Cir. 2006), on the other hand, held that mistakes of law may render the traffic stop unreasonable under the fourth amendment. Specifically, the Delfin-Colina court noted that in those cases finding a traffic stop based on a mistake of law unreasonable, "the specific, articulable facts revealed that the alleged infractions upon which the vehicles were stopped were not based in law." Delfin-Colina, 464 F.3d at 399. The court concluded that if an objective review of the record establishes reasonable grounds to conclude the identified law was actually broken, the stop is constitutional despite the fact that the officer was mistaken about the scope of activities the law actually prohibited. Delfin-Colina, 464 F.3d at 399.

We agree with the majority of federal courts of appeal that a traffic stop based on a mistake of law is generally unconstitutional, even if the mistake is reasonable and made in good faith. To satisfy the reasonableness requirement of the fourth amendment, a police officer conducting a search or seizure under an exception to the warrant requirement need not always be correct but must always be reasonable. See Illinois v. Rodriguez, 497 U.S. 177, 185-86, 111 L. Ed. 2d 148, 159, 110 S. Ct. 2793, 2800 (1990). For this reason, traffic stops based on an officer's objectively reasonable mistake of fact rarely violate the fourth amendment. See, e.g., Tibbetts, 396 F.3d at 1138; United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000). However, a police officer who mistakenly believes a violation occurred when the acts in question are not prohibited by law is not acting reasonably. See McDonald, 453 F.3d at 961; Tibbetts, 396 F.3d at 1138 (finding that the "failure to understand the law by the very person charged with enforcing it is not objectively reasonable" (emphasis in original)).

We also agree, additionally, with the distinction articulated in Delfin-Colina. When reviewing a police officer's rationale for a traffic stop, the court should "look to whether

- 12 -

specific, articulable facts produced by the officer would support reasonable suspicion of a traffic infraction." Delfin-Colina, 464 F.3d at 398. It only follows that if, despite the officer's mistaken interpretation of the law, the facts known to him raised a reasonable suspicion that the defendant was in fact violating the law as written, the traffic stop was constitutional.

Having so found, we conclude that a reasonable officer, correctly interpreting the law and considering the facts available to Officer Hiland, would not have had reasonable suspicion to initiate the traffic stop. We reach this conclusion despite the fact that the facts of Delfin-Colina are strikingly similar to the facts of the instant case because of a few key distinctions.

In Delfin-Colina, the police officer observed the defendant driving a truck with a necklace or pendant hanging from the rearview mirror. Delfin-Colina, 464 F.3d at 394. The officer believed that any object hanging from a rearview mirror violated Pennsylvania law. Delfin-Colina, 464 F.3d at 394. However, the relevant statute only prohibited objects hanging from a rearview mirror that "'materially obstruct, obscure[,] or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.'" Delfin-Colina, 464 F.3d at 395, quoting 75 Pa. Cons. Stat. §4524(c). After stopping the defendant, the officer discovered the object was a "crucifix *** dangling from the rearview mirror." Delfin-Colina, 464 F.3d at 395. He also discovered the occupants of the truck were illegal aliens. Delfin-Colina, 464 F.3d at 395. The trial court denied the defendant's motion to suppress the evidence obtained as a result of the officer's traffic stop. Delfin-Colina, 464 F.3d at 395.

On appeal, the Third Circuit concluded that although the officer made a "significant mistake of law," an objective review of the facts showed that a police officer correctly

- 13 -

interpreting the statute and in the actual officer's position would have possessed reasonable suspicion to believe that the defendant was in violation of the statute. Delfin-Colina, 464 F.3d at 400. Specifically, the officer testified that the item was long enough to almost touch the dashboard and was not stationary. Delfin-Colina, 464 F.3d at 400. The officer also testified he believed the item obscured the driver's vision because the object would swing and be a distraction as the driver drove down the road. Delfin-Colina, 464 F.3d at 394, n.2. In fact, the court concluded that anything hanging down so low as to almost touch the dashboard with the potential to swing to and fro "would, arguably, be a per se violation of [the statute]." Delfin-Colina, 464 F.3d at 400.

The facts and the statute in question in the instant case, however, are distinguishable from those in Delfin-Colina. Despite the fact that the Delfin-Colina officer believed any suspended object violated the statute, he articulated facts that would have given a reasonable officer correctly interpreting the law reasonable suspicion to believe the defendant was violating the statute. In contrast here, Officer Hiland failed to present any such testimony.

Officer Hiland testified that he stopped defendant's vehicle because the beads were an obstruction and hindered defendant from observing other drivers from the windshield of the vehicle. He testified the beads were hanging straight down, in a single strand, at defendant's eye level. The trial court concluded the beads had a diameter of one-fourth of an inch.

The fact that Officer Hiland testified the beads "obstructed" defendant's view does not support reasonable suspicion because he believed anything hanging from the rearview mirror constituted an obstruction. When asked whether an item can obstruct without materially obstructing, Officer Hiland refused to answer the question:

- 14 -

"Sir, I enforce the statute. In my previous vehicle stops, I have stopped vehicles with small items to large items. I enforce the statute. I do not sit in my vehicle and decide what is what. I enforce the statute, sir. That's my job."

Consequently, a reasonable officer correctly interpreting the law would not have had reasonable suspicion to conduct the traffic stop because Officer Hiland never testified the beads constituted a material obstruction as required by the statute.

Officer Hiland also testified that the beads hindered defendant's ability to observe other drivers. However, section 12-503(c) of the Vehicle Code does not prohibit items that "hinder" a driver's ability to observe other drivers. Section 12-503(c) of the Vehicle Code specifically provides that suspended items must not materially obstruct a driver's view. See 625 ILCS 5/12-503(c) (West 2004). A simple hindrance or obstruction is not a violation of the statute.

Certainly, the trial court's determination should not focus on whether an offense was actually committed but whether an arresting officer reasonably suspected at the time of the stop that criminal activity was taking place or about to take place. People v. Jackson, 335 Ill. App. 3d 313, 316, 780 N.E.2d 826, 829 (2002); see also Village of Lincolnshire v. DiSpirito, 195 Ill. App. 3d 859, 864, 552 N.E.2d 1238, 1241 (1990) (finding that an officer making an investigatory traffic stop need not have sufficient evidence to convict the driver). However, based on Officer Hiland's mere agreement on redirect examination that the beads "hindered" defendant's view, we conclude a reasonable officer correctly interpreting section 12-503(c) could not have possessed reasonable suspicion to initiate the traffic stop.

- 15 -

Moreover, the cases cited by the parties are distinguishable. In <u>People v. Mendoza</u>, 234 Ill. App. 3d 826, 599 N.E.2d 1375 (1992), the appellate court found the initial stop of a vehicle constitutional and reversed the trial court's order suppressing evidence. In that case, the court found the police officer who initiated the traffic stop "was quite adamant" that the fuzzy dice and other items hanging from the rearview mirror would have materially obstructed the driver's view in some directions. <u>Mendoza</u>, 234 Ill. App. 3d at 838, 599 N.E.2d at 1383. Similarly, in <u>Jackson</u>, 335 Ill. App. 3d 313, 780 N.E.2d 826, the appellate court found the initial stop of the vehicle constitutional and reversed the trial court's order suppressing evidence. However, in that case, the police officer testified that two air fresheners hanging from rearview mirror were a material windshield obstruction. <u>Jackson</u>, 335 Ill. App. 3d at 316, 780 N.E.2d at 828. In neither of those cases did the officer act under a mistake of law, and both officers testified the obstruction in question was material.

The State also cites <u>United States v. Smith</u>, 80 F.3d 215 (7th Cir. 1996), in support of its argument that the trial court did not err by denying the motion to suppress. In that case, while the issue was whether the officer's subjective reasons for stopping the vehicle were relevant, the appellate court concluded the officer had probable cause to stop the vehicle with an air freshener hanging from the rearview mirror. <u>Smith</u>, 80 F.3d at 219. That decision does not indicate that the officer testified the obstruction was a material one. In the instant case, the State stresses that Officer Hiland testified the beads in this case were larger than an air freshener.

The beads at issue are contained in the record on appeal. Those beads, hanging in a single strand as Officer Hiland testified, could not have been larger than an air freshener. Absent testimony that Officer Hiland believed the beads materially obstructed defendant's view,

the trial court erred in concluding that Officer Hiland had reasonable suspicion to initiate the traffic stop.

The trial court also made a mistake of law by concluding that a one-fourth-inch bead or a penny hanging from a rearview mirror in front of the eye constitutes probable cause to believe that the statute has been violated. The court wrote in its order:

"While it was just a single strand of beads and the beads were just 1/4 inch in diameter, the question of material obstruction must be considered in the context of driving a moving vehicle on a busy street. Just as a penny held in front of the eye can obscure the sun, so can a bead in front of the eye obscure, even if just briefly, a distant stop sign or ball of a child that rolls into the street a block or two ahead."

Moreover, contrary to the court's taking judicial notice that Broadway was a busy street, Officer Hiland specifically testified that the fact defendant was driving on Broadway did not factor into his decision to write defendant a written warning. More important, however, the statute requires that the obstruction be material. 625 ILCS 5/12-503(c) (West 2004). Therefore, Officer Hiland was required to have a reasonable suspicion or probable cause to believe that the beads constituted a material obstruction. Under the trial court's rationale, a police officer could stop a vehicle for any obstruction because any object, no matter how small, could "obscure" the driver's vision.

When construing a statute, the primary consideration is to determine and give effect to the legislature's intent. People v. Skillom, 361 Ill. App. 3d 901, 906, 838 N.E.2d 117, 122 (2005). A court must consider the statute in its entirety. People v. Davis, 199 Ill. 2d 130,

- 17 -

135, 766 N.E.2d 641, 644 (2002). "The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition." Davis, 199 Ill. 2d at 135, 766 N.E.2d at 644. Here, the plain language of the statute requires the object suspended between the driver and the front windshield "materially obstruct[] the driver's view." 625 ILCS 5/12-503(c) (West 2004). Consequently, the trial court's decision was contrary to the language in the statute.

To conclude, Officer Hiland's mistake of law rendered the traffic stop unreasonable. Considering the facts available to Officer Hiland, a reasonable officer correctly interpreting the law would not have had reasonable suspicion that a single strand of beads hanging from a rearview mirror at a driver's eye level constituted a violation of section 12-503(c) of the Vehicle Code. The traffic stop, therefore, was unconstitutional, and the trial court should have granted defendant's motion to suppress.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

APPLETON and COOK, JJ., concur.