# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Price*, 2011 IL App (4th) 110272

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RYAN M. PRICE, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-11-0272, 4-11-0273 cons. |
| Argued<br>Filed | October 19, 2011<br>December 12, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for DUI and unlawful possession of cannabis and drug paraphernalia, the denial of defendant's motion to suppress evidence was affirmed where the arresting officer was justified in stopping defendant's vehicle based on a reasonable suspicion that the air freshener he observed in the vehicle constituted a material obstruction that violated section 12-503(c) of the Illinois Vehicle Code. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, Nos. 10-CM-352, 10-DT-94 cons.; the Hon. Mark A. Fellheimer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Ronald E. Boyer (argued), of Ronald E. Boyer, P.C., of Watseka, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman, and John E. Teefey (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.

Justice Pope concurred in the judgment and opinion.

Justice Appleton dissented, with opinion.

**OPINION**

¶ 1        In March 2011, the trial court found defendant, Ryan M. Price, guilty of driving under the influence (DUI), unlawful possession of drug paraphernalia, and unlawful possession of cannabis. The court sentenced him to 2 years of conditional discharge and 20 days in jail.

¶ 2        On appeal, defendant argues the trial court erred in denying his motion to suppress evidence and his motion to rescind the statutory summary suspension. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4        On July 21, 2010, defendant received a ticket for DUI (625 ILCS 5/11-501(a)(4) (West 2010)) following a traffic stop. In August 2010, the State charged defendant with one count of unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2010)), alleging he knowingly possessed a glass marijuana smoking pipe with the intent to use the pipe in the inhalation of cannabis. The State also charged him with one count of unlawful possession of cannabis (720 ILCS 550/4(a) (West 2010)), alleging he knowingly possessed a substance containing cannabis. In September 2010, the State charged defendant with driving with an unlawful substance (tetrahydrocannabinol metabolite) in his urine (625 ILCS 5/11-501(a)(6) (West 2010)).

¶ 5        In September 2010, defendant filed a motion to quash arrest and suppress evidence regarding the traffic stop of his vehicle. On September 16, 2010, defendant was given notice of the summary suspension of his driving privileges. In October 2010, defendant filed a petition to rescind the statutory summary suspension. The trial court then conducted a hearing on both motions.

¶ 6        Fairbury police officer Evan Henkel testified he observed defendant driving a Dodge Caravan on July 21, 2010, between approximately 8 and 10 a.m. He first noticed the vehicle had a broken rear taillight on the driver's side. Henkel followed the vehicle and noticed "an

air freshener hanging from the rearview mirror," which he had seen when he first saw the vehicle. Because of the broken taillight and the air freshener, Henkel executed a traffic stop. He guessed the air freshener was three inches in width and four to five inches in length. It was hanging from a string and the top was "approximately two or three inches below the bottom of the mirror." Henkel testified he had no specific training with regard to air fresheners and whether they constitute a material obstruction.

¶ 7 Officer Henkel requested defendant's driver's license and proof of insurance. After checking the materials, Henkel advised defendant he could smell burnt cannabis inside the vehicle. Defendant exited the vehicle and consented to a search of his person. Henkel did not find any contraband on him. A search of the vehicle revealed a substance resembling cannabis and paraphernalia.

¶ 8 On cross-examination, Officer Henkel testified he observed the air freshener hanging from the mirror "for a great deal of time" and also saw it swaying. Based on defendant's sitting position, Henkel testified the air freshener "would have to impair his ability to–obstruct his view." Henkel estimated there were a minimum of five times that defendant would have been required to look to his right, the same direction in which the air freshener obstructed his view.

¶ 9 When Officer Henkel asked defendant whether anybody had smoked in the vehicle, defendant stated his brother had smoked earlier in the day. Defendant later admitted the vehicle contained cannabis and/or paraphernalia. A search of the vehicle revealed a green leafy substance believed to be cannabis along with a glass smoking pipe containing residue. Defendant later admitted smoking cannabis less than an hour before the stop. Henkel placed defendant under arrest.

¶ 10 Defendant testified the "Yankee Candle" air freshener was about three inches wide and four inches long. He stated it hung from a string, and the top of the cardboard was approximately 1.5 inches from the bottom of the mirror. Defendant did not recall the air freshener obstructing his view and he "never had a problem with it at all."

¶ 11 Following closing arguments, the trial court denied defendant's motions. The court found the officer had an articulable and reasonable suspicion to effectuate a stop based on the evidence.

¶ 12 In March 2011, the trial court found defendant guilty of DUI, possession of drug paraphernalia, and possession of cannabis. The court sentenced him to 2 years of conditional discharge and 20 days in jail. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14 Defendant argues the trial court erred in denying his motion to suppress evidence and his motion to rescind his statutory summary suspension. We disagree.

¶ 15                      A. Standard of Review and Burden of Proof

¶ 16 On review of a motion to suppress, this court is presented with mixed questions of law and fact. *People v. McQuown*, 407 Ill. App. 3d 1138, 1143, 943 N.E.2d 1242, 1246 (2011).

"When reviewing a trial court's ruling on a motion to suppress, we will accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence; but we will review *de novo* the court's ultimate decision to grant or deny the motion." *People v. Close*, 238 Ill. 2d 497, 504, 939 N.E.2d 463, 467 (2010).

¶ 17     On a motion to suppress evidence, the defendant has the burden of proving the search and seizure were unlawful. 725 ILCS 5/114-12(b) (West 2010); *People v. Barker*, 369 Ill. App. 3d 670, 673, 867 N.E.2d 1021, 1023 (2007). "The burden of producing evidence, or the burden of production, rests with the defendant." *People v. Mott*, 389 Ill. App. 3d 539, 542, 906 N.E.2d 159, 163 (2009). " 'However, once the defendant makes a *prima facie* showing of an illegal search and seizure, the burden shifts to the State to produce evidence justifying the intrusion.' " *People v. Reatherford*, 345 Ill. App. 3d 327, 334, 802 N.E.2d 340, 347 (2003) (quoting *People v. Ortiz*, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000)).

¶ 18                               B. The Fourth Amendment

¶ 19     The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, the Illinois Constitution affords citizens with "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, § 6. Our supreme court has interpreted the search-and-seizure clause of the Illinois Constitution in a manner consistent with the United States Supreme Court's fourth-amendment jurisprudence. See *People v. Caballes*, 221 Ill. 2d 282, 335-36, 851 N.E.2d 26, 57 (2006).

¶ 20     "When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation." *People v. Ramsey*, 362 Ill. App. 3d 610, 614, 839 N.E.2d 1093, 1097 (2005). A stop of a vehicle and the detention of its occupants constitutes a "seizure" under the fourth amendment. *People v. Jones*, 215 Ill. 2d 261, 270, 830 N.E.2d 541, 549 (2005). Thus, "vehicle stops are subject to the fourth amendment's reasonableness requirement" and are analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467. "Under *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime." *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467.

¶ 21     To be constitutionally permissible, an "investigatory stop must be justified at its inception." *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467. " '[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "In judging the police officer's conduct, we apply an objective standard: 'would the facts available to the officer at the moment of the seizure *** "warrant a man of reasonable caution in the belief" that the action was appropriate?' " *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467 (quoting *Terry*, 392 U.S. at 21-22).

¶ 22    Defendant argues the traffic stop was not justified because the evidence failed to show the air freshener constituted a material obstruction. We disagree.

¶ 23    The material-obstruction statute found in section 12-503(c) of the Illinois Vehicle Code reads as follows:

> "No person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield *** which materially obstructs the driver's view." 625 ILCS 5/12-503(c) (West 2010).

Over the last several years, this court has been confronted with multiple cases concerning whether items hanging from a rearview mirror constitute a material obstruction.

¶ 24    In *People v. Cole*, 369 Ill. App. 3d 960, 963, 874 N.E.2d 81, 84-85 (2007), the defendant was stopped because the officer observed a single strand of opaque beads that were one-fourth of an inch in diameter and hanging four inches in length from the rearview mirror at eye level. The arresting officer, however, believed "anything suspended between the driver and the front windshield violated section 12-503(c)." *Cole*, 369 Ill. App. 3d at 966, 874 N.E.2d at 87. The officer never testified the beads constituted a material obstruction but only that they "hindered [the] defendant's ability to observe other drivers." *Cole*, 369 Ill. App. 3d at 969, 874 N.E.2d at 89. This court noted "[a] simple hindrance or obstruction is not a violation of the statute." *Cole*, 369 Ill. App. 3d at 969, 874 N.E.2d at 89. Because the arresting officer did not have a reasonable suspicion or probable cause to believe the beads constituted a material obstruction based on his mistake of law, this court reversed the trial court's denial of the defendant's motion to suppress. *Cole*, 369 Ill. App. 3d at 971, 874 N.E.2d at 91.

¶ 25    In *People v. Johnson*, 384 Ill. App. 3d 409, 410, 893 N.E.2d 275, 278 (2008), the arresting officer stopped the defendant's car after observing from the rear and side at night an air freshener shaped like two life-sized cherries hanging from the rearview mirror. The officer testified the air freshener created a material obstruction of the defendant's view of the roadway but he did not tell that to the defendant during the stop. *Johnson*, 384 Ill. App. 3d at 411, 893 N.E.2d at 277. When confronted with photographs of the car with the air freshener hanging from the rearview mirror, the officer concluded the view was not obstructed. *Johnson*, 384 Ill. App. 3d at 411, 893 N.E.2d at 277. Considering at the time of the stop the officer did not tell the defendant the air freshener was a material obstruction, the officer's fleeting view of the cherries in the dark, and the officer's lack of understanding as to what constituted a material obstruction, this court affirmed the trial court's granting of the motion to suppress. *Johnson*, 384 Ill. App. 3d at 414, 893 N.E.2d at 280.

¶ 26    In *Mott*, 389 Ill. App. 3d at 540, 906 N.E.2d at 161, the arresting officer pulled over the defendant's vehicle, which contained a leaf-shaped air freshener hanging from the rearview mirror. The officer estimated the air freshener was 3½ to 4 inches wide and 4 to 5 inches tall and believed it hung about 1 inch below the mirror on a string which swung side to side. *Mott*, 389 Ill. App. 3d at 540, 906 N.E.2d at 161. The officer had no formal training as to what constituted a "material obstruction" (*Mott*, 389 Ill. App. 3d at 541, 906 N.E.2d at 161), and the trial court found the officer "mistakenly believed any object the size of a fingernail or larger hanging between the driver and the windshield constituted a 'material obstruction'

providing reasonable suspicion for a traffic stop." *Mott*, 389 Ill. App. 3d at 543, 906 N.E.2d at 163. Along with noting the air freshener was smaller than that estimated by the officer, the court found he did not testify to the relationship between the air freshener and the defendant's eye level. *Mott*, 389 Ill. App. 3d at 541-42, 906 N.E.2d at 162.

¶ 27 In affirming the trial court's decision to grant the motion to suppress, this court noted the officer "failed to articulate any specific facts giving rise to an inference [the] defendant's view was obstructed." *Mott*, 389 Ill. App. 3d at 544, 906 N.E.2d at 164-65. Although concluding the air freshener did not give rise to reasonable suspicion of a violation of section 12-503(a) (*Mott*, 389 Ill. App. 3d at 547, 906 N.E.2d at 166), we did not find that it could never give rise to a reasonable suspicion. We quoted the trial court's order, which stated as follows:

> " 'Illinois law does not criminalize [*per se*] the suspension of an object from a rearview mirror. It is not unusual to see objects such as necklaces, pendants, parking passes, souvenirs, good[-]luck charms, beads, crucifixes, St. Christopher [medals], and sunglasses suspended from a rearview mirror. [Section] 12-503(c) prohibits the suspension or placement of an object in a window "[which] materially obstructs the driver's view." ' " *Mott*, 389 Ill. App. 3d at 546, 906 N.E.2d at 165-66.

We noted, however, "[s]ize alone does not determine whether an object materially obstructs the driver's view. In our view, all of the objects listed could be material obstructions in the proper situation." *Mott*, 389 Ill. App. 3d at 546, 906 N.E.2d at 166.

¶ 28 Here, this case is before us following the trial court's denial of defendant's motion to suppress. In making its decision on the motion, the trial court's focus is not on "whether an offense was actually committed but whether an arresting officer reasonably suspected at the time of the stop that criminal activity was taking place or about to take place." *Cole*, 369 Ill. App. 3d at 969-70, 874 N.E.2d at 89-90 (citing *People v. Jackson*, 335 Ill. App. 3d 313, 316, 780 N.E.2d 826, 829 (2002)).

¶ 29 In the case *sub judice*, Officer Henkel testified he saw the air freshener as soon as he saw defendant's vehicle. He estimated the air freshener to be three inches wide and four to five inches in length. It hung by a string, and the top was approximately two to three inches below the bottom of the mirror. He believed the air freshener was "at least a few inches below [defendant's] eye level" and he saw it swaying. From defendant's sitting position, Henkel believed "[i]t would have to impair his ability to–obstruct his view." He estimated defendant passed at least five intersections that would require him to look to the right and in the path of the air freshener.

¶ 30 In its findings of fact, the trial court found the air freshener was about three inches wide and three to four inches high and hung by an elastic string. The top was about two inches below the mirror. The court also found Henkel believed the air freshener did constitute a material obstruction based upon its placement in the vehicle and in relation to defendant's eye level. The court stated it reviewed the *Cole*, *Johnson*, and *Mott* opinions and found Officer Henkel's recitation of the facts and details as to why the air freshener constituted a material obstruction was sufficient to establish a reasonable suspicion of a material obstruction.

¶ 31    Here, the evidence sufficiently established Officer Henkel had a reasonable suspicion that the air freshener constituted a material obstruction thereby justifying the traffic stop. Henkel testified to the size of the air freshener, how it swayed back and forth, and that it would have obstructed defendant's view based on his sitting position. Henkel did not testify he pulled defendant over simply because he had an air freshener hanging from his rearview mirror. Moreover, he was not mistakenly of the view that anything larger than a fingernail (see *Mott*, 389 Ill. App. 3d at 541, 906 N.E.2d at 162) constituted a material obstruction. Instead, he had a good view of the air freshener and testified to specific facts as to why he believed it constituted a material obstruction. The video entered into evidence shows the air freshener hanging down from the mirror and swaying side to side. Given Henkel's observations and the video evidence, a reasonable officer could conclude the air freshener violated section 12-503(c). See *United States v. Garcia-Garcia*, 633 F.3d 608, 616 (7th Cir. 2011) (noting a "reasonable belief is all that is needed to justify the warrantless stop"). Because we have found a reasonable suspicion existed based on the material obstruction, we need not address defendant's claim that the traffic stop was not justified because of the broken taillight lens.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 34    Affirmed.

¶ 35    JUSTICE APPLETON, dissenting:

¶ 36    I respectfully dissent based on this court's previous treatment of hanging obstructions, which may or may not "materially" obstruct a driver's view through a vehicle's windshield. See *People v. Mott*, 389 Ill. App. 3d 539, 547 (2009); *People v. Johnson*, 384 Ill. App. 3d 409, 414 (2008); and *People v. Cole*, 369 Ill. App. 3d 960, 971 (2007).

¶ 37    It is apparent from these cases that materiality of the obstruction is key to the resolution of the question of whether a stop by a police officer and, of course, a subsequent search is valid within the confines of the fourth amendment. *Mott*, 389 Ill. App. 3d at 544.

¶ 38    In this regard, it is impossible for the trial court to make a "materiality" determination without seeing the offending air freshener and without observing the object hanging from the rearview mirror. The burden of proving materiality is on the State if the stop is to be justified. *Mott*, 389 Ill. App. 3d at 544. While I grant that materiality is, in large part, a subjective determination, our previous cases cited above call into question a *per se* approach to items hanging from the rearview mirror.

¶ 39    I would assume the legislature enacted section 12-503(c) of the Vehicle Code (625 ILCS 5/12-503(c) (West 2010)) for purposes of achieving the goal of traffic safety, an admittedly laudable purpose. As our previous decisions have shown, as does the record in this case, the statute is being abused to achieve traffic stops where no other probable cause exists. I would grant the reversal of the finding of probable cause in this case.