NOTICE
Decision filed 12/02/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190505-U

NO. 5-19-0505

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Union County. |
| | ) | |
| v. | ) | No. 18-CF-160 |
| | ) | |
| RONALD A. HILL, | ) | Honorable |
| | ) | Jeffery B. Farris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where there was no arguable merit to contentions that (1) the trial court erred in finding the stop of defendant's vehicle was lawful; (2) the trial court erred in allowing the State to impeach defendant with a prior conviction of a similar crime; (3) there was any error in allowing a juror who opined that all defendants are guilty to sit on the jury; and (4) defendant was not proved guilty beyond a reasonable doubt, we allow defendant's appointed counsel on appeal to withdraw and affirm the trial court's judgment.

¶ 2   Following a jury trial, defendant, Ronald A. Hill, was convicted of two counts of armed violence (720 ILCS 5/33A-2(a) (West 2018)) and one count of being an armed habitual criminal (*id.* § 24-1.7(a)(1)). The trial court sentenced him to concurrent 20-year sentences. Defendant appealed.

¶ 3   Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing this appeal presents no arguably meritorious issues. See

1

*Anders v. California*, 386 U.S. 738 (1967). OSAD notified defendant of its motion. This court provided defendant with an opportunity to file a response, and he did. After considering OSAD's motion and supporting memorandum, defendant's response, and the entire record on appeal, we agree this appeal presents no arguably meritorious issue. Therefore, we grant OSAD leave to withdraw and affirm the trial court's judgment.

¶ 4                                       BACKGROUND

¶ 5     On August 18, 2018, defendant was charged with two counts of armed violence and one count of armed habitual criminal when police found marijuana, Xanax pills, and a gun in defendant's car following a traffic stop. On September 5, 2018, a grand jury bill of indictment was issued for all three counts.

¶ 6     Defendant filed a motion to suppress the evidence obtained during the traffic stop, contending the stop was improper. At a hearing on the motion, Anna police officer Jason Leek testified that, while on patrol, he recognized a white SUV that he had stopped two weeks earlier and knew that the registered owner had a suspended driver's license. Although he could not see who was driving on that day, the officer noticed an item hanging from the rear-view mirror that appeared to obstruct the driver's vision. After the stop, the officer determined the object was an air freshener. Later, he sat in the driver's seat and concluded the air freshener was "a definite material obstruction." The trial court denied defendant's motion, finding Officer Leek had reasonable grounds for the traffic stop.

¶ 7     The State moved to introduce evidence of defendant's prior convictions if he testified. The State sought to introduce a 2006 conviction and two 2013 convictions, one of which was for unlawful possession of a weapon by a felon. The court allowed only the most recent of these convictions.

¶ 8    During *voir dire*, a prospective juror, Grace Tipton, opined on her questionnaire that "everyone is guilty." When questioned by defense counsel, she explained, "You wouldn't be in this predicament if you didn't do something wrong. That's the way I see it. You are proven innocent until you are proven guilty, you know." Tipton ultimately served on the jury.

¶ 9    At trial, Officer Leek testified that, shortly after midnight on August 18, 2018, he saw an SUV that he recognized from a previous incident. He knew the registered owner's driver's license was suspended, but he could not see who was driving the vehicle. He saw three people in the vehicle, as well as an item dangling from the rear-view mirror that appeared to obstruct the driver's field of vision.

¶ 10    Officer Leek stopped the vehicle and identified the driver as William "Junior" Noble. Officer Leek smelled a strong odor of cannabis and noticed a liquor bottle in the center console. Defendant, the registered owner, occupied the front passenger seat. A third man, Travis Pender, was in the back seat.

¶ 11    Defendant told Officer Leek the bottle was his and admitted there was cannabis in the glove box. Officer Leek also saw three plastic baggies and a pill bottle in the glove box after defendant voluntarily opened it.

¶ 12    Defendant handed the baggies to Officer Leek, admitted they belonged to him, and described their relative weights. Defendant also admitted ownership of the pill bottle and stated the contents were alprazolam, which is also known as Xanax. Officer Leek opined that keeping the cannabis in the three separate bags indicated an intent to sell it rather than to possess it for personal use.

¶ 13    Officer Leek arrested defendant. In the course of doing so, the officer found $579 in cash, some in defendant's wallet and some in defendant's pocket. Officer Leek testified, based on his

3

experience and training, the fact that the bills were kept in two different places was an indication that defendant was selling cannabis.

¶ 14 Officer Leek returned to search the vehicle, where he found a loaded firearm underneath the back seat, behind the driver's seat, where Pender had been sitting. After initially denying knowledge of the gun, defendant admitted it was his. Officer Leek also found three scales inside the vehicle.

¶ 15 In a video recorded statement, which was played for the jury, defendant admitted the gun was his, stating that he bought it "off the street" for $250. Officer Leek repeated defendant's admissions about possessing the cannabis and alprazolam pills. Defendant did not deny any of the admissions. Defendant admitted he sold "weed" and had three scales because they did not always work correctly. Officer Leek stated that, although defendant admitted he had been drinking that night, defendant did not appear intoxicated at the time of the interrogation.

¶ 16 Noble and Pender testified. Both denied having a gun in the vehicle or knowing one was present.

¶ 17 Defendant testified and admitted the cannabis was his, but stated there were only two bags, and they were for his personal use, not for sale. Defendant did not recognize the gun and stated he did not know how it got in his car but noted Pender mentioned having a gun he was trying to sell. Defendant stated that he decided to admit owning the gun, given that he was being arrested anyway, thinking that Pender would eventually admit to owning it. The State then impeached defendant with his 2013 conviction for unlawful possession of a weapon.

¶ 18 The jury found defendant guilty of all counts and the court sentenced him to 20 years' imprisonment on each count, with the sentences to run concurrently. Defendant timely appealed.

4

¶ 19                                    ANALYSIS

¶ 20    OSAD concludes the only potential issues are (1) whether the court erred in denying defendant's suppression motion; (2) whether the court erred in allowing the State to impeach defendant with his prior conviction of a similar crime; (3) whether the court erred, or defense counsel was ineffective, for allowing a potentially biased juror to serve; and (4) whether the State proved defendant's guilt beyond a reasonable doubt. OSAD concludes none of these issues has even arguable merit, and we agree.

¶ 21    There was no error in the denial of defendant's motion to suppress in which he argued that Officer Leek lacked a reasonable basis to stop defendant's vehicle. "The temporary detention of an individual during a vehicle stop is a seizure within the meaning of the fourth amendment and is subject to the reasonableness requirement of *Terry v. Ohio*, 392 U.S. 1, 21 (1968)." *People v. Cole*, 369 Ill. App. 3d 960, 965 (2007). "A traffic violation generally provides a sufficient basis for a traffic stop." *Id*. at 966 (citing *People v. Rozela*, 345 Ill. App. 3d 217, 225 (2003)). "A police officer may make a valid traffic stop where the officer is able to point to specific and articulable facts which, when taken together with the rational inferences therefrom, reasonably warrant the stop of the defendant's vehicle." *Rozela*, 345 Ill. App. 3d at 225. "The purpose of that stop is to allow the officer to briefly investigate the circumstances that provoke suspicion and to either confirm or dispel that suspicion." *People v. Little*, 2016 IL App (3d) 130683, ¶ 16. An officer may conduct an investigatory stop with reasonable, articulable suspicion, "without first determining whether the circumstances he observed would satisfy each element of a particular offense." *Id.* ¶ 18.

¶ 22    Here, Officer Leek testified that, having stopped the same vehicle two weeks earlier, he knew its registered owner—defendant—lacked a valid driver's license. When he saw the same

5

vehicle again, it was reasonable for him to infer defendant was driving his own car. See *People v. Galvez*, 401 Ill. App. 3d 716, 718 (2010) (police officer may pull over a vehicle upon learning that the vehicle's registered owner has suspended or revoked license).

¶ 23    Office Leek also witnessed a violation of section 12-503(c) of the Illinois Vehicle Code, which provides as follows:

"No person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield, rear window, side wings[,] or side windows immediately adjacent to each side of the driver which materially obstructs the driver's view." 625 ILCS 5/12-503(c) (West 2018).

¶ 24    A violation of section 12-503(c) is sufficient to authorize a traffic stop. *People v. Jackson*, 335 Ill. App. 3d 313, 315-16 (2002). In *People v. Cole*, 369 Ill. App. 3d 960, 971 (2007), the court held that the officer lacked reasonable grounds for a traffic stop based on a violation of section 12-503(c). However, as OSAD notes, that case is distinguishable. In *Cole*, the arresting officer wrongly believed that any obstruction—not just a material one—violated the statute. *Id.* Here, Officer Leek specifically testified that he believed the obstruction was material and even sat in the driver's seat to determine the extent of the obstruction. Because Officer Leek correctly understood the law, his observation of a violation provided reasonable grounds for the stop and the court properly denied the motion to suppress.

¶ 25    In response, defendant contends primarily that the initial stop was unconstitutional. He argues that pulling over a vehicle for the common and relatively minor violation of having an air freshener obstructing the windshield was merely a pretext to possibly uncover more serious violations. The Supreme Court states otherwise and has expressly held that pretextual traffic stops do not violate the fourth amendment. *Whren v. United States*, 517 U.S. 806, 812-13 (1996) (the

6

Court's earlier cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"). It is undisputed that Officer Leek observed a violation of the vehicle code, and his subjective motivation for effecting the traffic stop is simply irrelevant.

¶ 26    Defendant makes two related contentions in his responsive brief, namely: (1) Officer Leek followed the vehicle for a considerable distance before effecting the traffic stop outside his jurisdiction and (2) Officer Leek engaged in racial profiling. We note, however, defendant failed to raise these issues in the trial court, thus forfeiting them on review. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005).

¶ 27    In any event, as to the former issue, the Code of Criminal Procedure of 1963 allows an officer to question or make an arrest outside of his or her jurisdiction, "if the officer is engaged in the investigation of criminal activity that occurred in the officer's primary jurisdiction and the temporary questioning or arrest *** is conducted pursuant to that investigation." 725 ILCS 5/107-4(a-3)(1) (West 2018).

¶ 28    As to the latter argument, "selective enforcement" occurs when police limit investigation to people of one race and fail to investigate similar situations for people of a different race. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 100. In order to establish selective enforcement, defendant is required to "provide evidence of discriminatory effect and discriminatory intent/purpose." *Id.* ¶¶ 101-02. " '[T]his standard generally requires evidence that similarly situated individuals of a difference race or classification were not prosecuted, arrested, or otherwise investigated.' " *Id.* ¶ 101 (quoting *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017)). Defendant points to no such evidence.

7

¶ 29 Defendant also contends that Officer Leek questioned him while he was intoxicated and without counsel. Defendant points to no evidence that he was in custody at the time. Generally, routine questions during a traffic stop are not a custodial interrogation implicating *Miranda v. Arizona*, 384 U.S. 436 (1966). See *People v. Tate*, 45 Ill. 2d 540, 543-44 (1970); *People v. Havlin*, 409 Ill. App. 3d 427, 434 (2011). Defendant received *Miranda* warnings prior to the recorded interrogation. Further, defendant cites no case holding that questioning an intoxicated person is a *per se* fifth amendment violation, nor does he cite evidence that he was so intoxicated that his will was overborne.

¶ 30 Defendant also contends that Officer Leek's questions constituted a "Messiah violation." Defendant presumably refers to *Massiah v. United States*, 377 U.S. 201 (1964), which involved surreptitious questioning of a defendant by government informants in violation of his sixth amendment right to counsel, and has no apparent application to this case, which did not involve a confidential informant.

¶ 31 OSAD next concludes there is no arguably meritorious contention that the court erred by allowing the State to impeach defendant with his prior weapons conviction. Evidence of a witness's prior conviction is admissible to attack his or her credibility where: (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; (2) less than 10 years has elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971).

¶ 32 "This last factor requires a trial judge to conduct a balancing test, weighing the prior conviction's probative value against its potential prejudice." *People v. Mullins*, 242 Ill. 2d 1, 14

8

(2011). In so doing, the court "should consider, *inter alia*, the nature of the prior conviction, the nearness or remoteness of that crime to the present charge, the subsequent career of the person, the length of the witness' criminal record, and whether the crime was similar to the one charged." *Id.* at 14-15. Whether a witness's prior conviction is admissible for impeachment purposes is within the trial court's sound discretion. *Id.* at 15. Moreover, although "courts should be cautious in admitting prior convictions for the same crime as the crime charged," "similarity alone does not mandate exclusion of the prior conviction." *People v. Atkinson*, 186 Ill. 2d 450, 463 (1999) (citing *People v. Redd*, 135 Ill. 2d 252, 326 (1990)).

¶ 33    Here, the conviction satisfied the first two *Montgomery* criteria and trial court clearly applied the *Montgomery* balancing test. Indeed, the court limited the State's impeachment to only one of the three convictions presented. While the conviction was somewhat similar to those charged in that all involved the possession of a weapon, nothing in the record suggests admission of this one conviction was unduly prejudicial such that it deprived defendant of a fair trial.

¶ 34    OSAD's third potential issue concerns juror Tipton being allowed to serve on the jury after she expressed her opinion that "everyone is guilty." "The burden of showing that a venireperson possesses a disqualifying state of mind is on the party making the challenge." *People v. Kuntu*, 196 Ill. 2d 105, 127 (2001). A trial court need not, *sua sponte*, strike a prospective juror although it has the discretion to do so. *People v. Metcalfe*, 202 Ill. 2d 544, 557 (2002). Thus, we cannot assign error to the trial court for failing to take action on its own. Nor is there a viable argument that defense counsel was ineffective. Generally, whether to exercise a peremptory challenge against a prospective juror is a strategic decision that will not support an ineffective-assistance claim. *Id.* at 562.

¶ 35    Here, Tipton clarified that she was "just being funny" on the questionnaire and further clarified that all she meant was that "everyone is guilty of something." She affirmatively stated—twice—that she understood that defendant was innocent until proven guilty. She also indicated her agreement with the *Zehr* principles, one of which was that the defendant was presumed innocent. See *People v. Zehr*, 103 Ill. 2d 472, 477 (1984); Ill. S. Ct. R. 431(b)(1) (eff. July 1, 2012).

¶ 36    Defense counsel could have reasonably concluded that Tipton had other qualities desirous in a juror or may have simply wanted to save a peremptory challenge for someone more objectionable. In any event, we cannot conclude that counsel's strategic decision to seat this particular juror was so misguided as to amount to ineffective assistance.

¶ 37    OSAD's final potential issue is whether the State proved defendant's guilt beyond a reasonable doubt. Where a defendant challenges on appeal the sufficiency of the evidence, we must, while considering all of the evidence in the light most favorable to the prosecution, decide "whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Murray*, 2019 IL 123289, ¶ 19 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses. *Id.*

¶ 38    Defendant was convicted of armed violence which, as charged, required the State to prove that defendant possessed cannabis with the intent to deliver and possessed a controlled substance while possessing a weapon. He was also convicted of being an armed habitual criminal which, as charged, required the State to prove that he possessed a handgun after having been convicted on separate occasions of two or more forcible felonies.

¶ 39    Officer Leek testified that he found what appeared to be marijuana and alprazolam in the glove box of a vehicle of which defendant was the registered owner. Forensic chemists confirmed

that the items were in fact cannabis and alprazolam. Defendant admitted at the scene and reiterated in a recorded statement that the marijuana and pills were his and that he did not have a prescription for the latter. Based on his experience, Officer Leek opined that the packaging of the marijuana in separate bags, defendant's possession of a large amount of cash, and the presence of multiple scales in the car indicated that the marijuana was for distribution rather than defendant's personal use.

¶ 40    In addition, Officer Leek testified that he found a gun in defendant's vehicle. The vehicle's two other occupants, Noble and Pender, denied knowing anything about the gun. Defendant admitted at the scene that the gun was his. In his recorded statement, he gave a rather detailed explanation of how he acquired it. Although at trial he denied owning it and gave a somewhat plausible explanation for why he falsely confessed, it was well within the jury's province to reject this testimony and instead credit the initial confessions.

¶ 41    As to the armed habitual criminal conviction, defendant admitted possessing the gun, and the parties stipulated that defendant was convicted two or more times of forcible felonies. Thus, the evidence was more than sufficient for the jury to find him guilty on that count.

¶ 42                                          CONCLUSION

¶ 43    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 44    Motion granted; judgment affirmed.